J. Irwin Shapiro, J.
In this action by the plaintiff wife to recover damages for personal injuries and by the plaintiff husband to recover for the loss of his wife’s services, the defendant has had a verdict.
Upon the rendition of the verdict, the plaintiffs moved to set it aside on the ground of alleged errors in my charge to the jury.
To make the point at issue understandable, a short recitation of the facts is necessary.
The plaintiff wife (hereinafter referred to as the plaintiff) testified that she and her brother went to defendant’s supermarket to do some shopping and about 15 or 20 minutes after she entered the store and as she passed the aisle near the vegetable counter she slipped and fell on a lettuce leaf which was on the floor, sustaining personal injuries.
Her brother did not see the accident but he testified that shortly after he entered the store, and therefore about 15 or 20 minutes before his sister was hurt, he too had occasion to pass in front of the vegetable counter and that he saw a leaf or leaves *552 or some kind of vegetable on the floor in the area used by customers to walk back and forth.
Aside from the medical testimony, that was the plaintiff’s case.
The defendant’s motion to dismiss was denied on the theory that giving every favorable intendment to the plaintiff’s proof, the jury could find that the leaf upon which the plaintiff allegedly slipped and fell was the same leaf or vegetable which the plaintiff’s brother claimed to have seen some 15 to 20 minutes previously and that it was a question of fact for determination by the jury as to whether, under all the circumstances, the time which elapsed was sufficient to charge the defendant with constructive notice of the condition.
The defendant thereupon called three of its employees at the store as witnesses. They all testified that the floor of the aisle alongside the vegetable counter was completely clear of any leaves, vegetables or other debris at the time the plaintiff fell but they admitted that from time to time customers who were handling the vegetables would drop leaves on the floor and that for that reason a number of bins were placed nearby for the use of customers in disposing of such loose leaves, etc. These employees also testified that the floor had been swept three to five times on the day of the accident prior to its occurrence and that it was their duty whenever they saw any leaves or other debris on the floor to remove it.
The foregoing were substantially the facts upon which the case went to the jury. In my charge I told the jury the difference between actual notice of a condition and constructive notice thereof. I then instructed the jury that in this case the plaintiff was relying upon constructive notice of the existence of the leaf on the floor and that the plaintiff’s case in that regard depended entirely upon the testimony of the plaintiff’s brother; that if they believed his testimony that he saw the leaf on the floor 15 to 20 minutes before the accident they could, if they felt that that was a sufficient time to bring home the facts to the defendant, find that the defendant was or should have been constructively aware of the situation. But I then instructed the jury further, that if they did not believe the brother when he testified to seeing the leaf or leaves on the floor that then there would be a failure of proof of any kind of notice to the defendant and that thereupon their verdict would of necessity have to be for the defendant.
To this charge the plaintiff excepted, stating: ‘ ‘ I respectfully except to that portion of your Honor’s charge which relates to constructive notice, particularly that portion where your Honor *553 charged on the brother’s testimony and I respectfully ask the Court at this time to charge the jury that in determining the questions of notice at this time, at the end of the entire case, they have a right to consider all of the evidence with relation to notice and the existence of that condition and the knowledge or notice on the part of the defendant and not to be limited to merely one facet or of one witness’ testimony.”
In reply to that request, the court stated: “ I charge you that in determining whether or not the defendant had constructive notice in this case, as I have defined that term to you, of course, you take into consideration all of the testimony in the case; the testimony of the witnesses for the defendant and the testimony of the witnesses for the plaintiff. I charge you again, as a matter of law, that the only testimony that you have before you that there was a rubbish condition or a leafy condition on that floor is the testimony given by the brother of this plaintiff.”
The plaintiff duly excepted to that charge. The plaintiff contends that it was error to instruct the jury that the only proof of notice of the claimed existence of the leaf on the floor at the time of the accident was that of the brother and that the charge to that effect precluded the jury from considering other proof of notice.
That contention is, in my opinion, wholly without merit, for there is no other proof in this record of notice of the alleged existing condition. The claim by plaintiff that the jury had a right to consider all the evidence in determining whether defendant had notice of the claimed condition, and that it should not have been limited to a consideration of the brother’s testimony alone, misses the point. On the question of the prior existence of the particular condition, which caused the plaintiff to fall, there was no other testimony but that of the brother. The defendant’s employees, by their testimony, merely admitted notice of the fact that on some other occasions customers did drop leaves, etc. on the floor. Those admissions would have a direct bearing on how often defendant was required to inspect its floor, and how much or how little time was required to charge the defendant with constructive notice after the existence of the specific condition which caused the fall had been established, but it did not lessen the necessity for direct proof of the existence of the particular negligent condition which caused the plaintiff’s fall, and in this case the only proof of the existence of that condition came from the brother.
In line with my understanding of the law as above set forth, I told the jury that “ in determining what degree of care the *554 defendant was required to use, you will take into consideration the testimony of all of the witnesses, including the witnesses for the defendant as to the practice on the part of customers and what, if anything, the defendant did to prevent that practice from continuing and what it did to alleviate the situation after it occurred.”
The cases of Izzo v. Jennings (271 App. Div. 914); Kellegher v. Forty-Second St., Manhattanville & St. Nicholas Ave. R. R. Co. (171 N. Y. 309) and Callahan v. New York Rys. Corp. (235 App. Div. 219, 221) cited by the plaintiff, are not in point.
In Izzo the court charged that if the jury found ‘ ‘ from the undisputed evidence in this case that this accident happened in any other manner other than what has been testified to here by the plaintiff, that their verdict must be for the defendant.”
Upon appeal that charge was held to be erroneous because the ‘ ‘ plaintiff was entitled to have the jury decide the issue of negligence on all of the evidence ’ ’. In that case there was other evidence in the case besides that of the plaintiff from which the jury could have drawn an inference of the defendant’s negligence. In our case too the jury was charged that in considering the question of negligence it had to take into consideration all of the evidence but it seems clear beyond peradventure that if the jury did not believe the testimony of plaintiff’s brother as to the existence of the specific condition which he claims he saw, there was no proof in the record of any specific defect upon which the case could go to the jury.
In Kellegher, the court’s charge, in effect, directed a verdict for the plaintiff when the court stated the law to be that if the jury believed the plaintiff’s witnesses, then the act of defendant’s conductor was a negligent act and constituted a right to recovery on behalf of the plaintiff. Upon appeal, the Court of Appeals properly said (p. 314): “The portion of the charge excepted to practically withdrew from the consideration of the jury any question except the truthfulness of plaintiff’s evidence and tended to withdraw from it the determination of the facts established by the proof and the inferences to be drawn therefrom. Such an instruction was improper. ’ ’
In that case the court took away from the jury the right to draw deductions or inferences from the testimony of the plaintiff as to whether or not the facts testified to established negligence and told the jury as a matter of law that the mere fact that they believed the plaintiff and his witnesses ipso facto necessitated a verdict for the plaintiff. It is obvious that the charge was improper but that has no bearing on this case where the court did not tell the jury what the facts were but merely *555 that, as a matter of law, if they disbelieved the plaintiff’s brother, then there was no other fact in the case from which they could draw an inference that the defendant had notice of the specific defect set forth in plaintiff’s bill of particulars and upon which she relied to recover and that therefore in such an event they would have to find for the defendant as a matter of law.
In Callahan, the court charged (p. 220) that “ if they believed the plaintiff’s testimony as to the manner in which the accident happened, then they must find a verdict in favor of the plaintiff.”
That charge suffered from the same infirmity as the charge in Kellegher.
Boiled down to essentials, the plaintiff’s contention is that if a defendant has knowledge of the fact that from time to time customers carelessly or thoughtlessly create a condition of danger, she may go to the jury merely by proving the existence of the condition on the occasion of her fall, without any proof of prior notice of the actual existence of that particular condition at the particular time and place of the fall.
To accept that contention would make supermarkets virtually insurers of the safety of their customers. Could it reasonably be contended that if a customer fell over a can of beans in the aisle of such a store, the defendant would be liable without proof of notice, either actual or constructive, of the existing condition merely because defendant’s employees admit that on occasion children remove cans from the shelves and place them in the aisles; or that if a customer, while using due care, fell over one of the carts used in such stores, the defendant would, ipso facto, be liable because on occasion customers have been known to leave such carts in helter-skelter fashion in the aisles?
The questions would seem to answer themselves.
To adopt plaintiff’s contention would require a holding that merely because the defendant knows that debris is from time to time dropped on the floor of a self-service store by customers, affirmative proof of notice of the existence of debris at the time of the accident is not required. We do not believe that to be the law.
In an effort to support her contention, plaintiff relies heavily on Pignatelli v. Gimbel Bros. (285 App. Div. 625, affd. 309 N. Y. 901) and Burke v. Wegman’s Food Markets (1 Misc 2d 130). In my opinion neither case is an authority in support of the plaintiff’s position. In Pignatelli, Mr. Justice Botein writing for the Appellate Division, set forth the facts as follows (pp. 626-627):
*556 “ It had rained heavily for many hours, stopping about four or five hours before the accident occurred. At the time of the accident there were puddles of water, mud and debris • • * on the sidewalks. The sun never emerged that day. Plaintiff entered the vestibule of defendant’s store, which had a terrazzo floor sloping down ten inches towards a revolving door. There were no mats on the floor, which was wet and had accumulations of dirt, mud and debris. As she approached the revolving door the heel of her right foot slipped on some mud and she was thrown to the floor.
“ An expert testified that a terrazzo floor will become slippery when wet, and that rubber mats are usually employed to overcome that condition. Various employees of defendant also testified that moisture made the terrazzo floor slippery; and that to protect its customers defendant provided three rubber mats for the vestibule floor, to make walking on that floor safe and secure for its patrons. It was the duty of the porters to put the mats down when it rained, and they were generally removed about an hour after the rain had stopped. Although such a general practice had been adopted defendant failed to adduce any testimony with respect to the actual practice followed during the day of the accident. ’ ’
Finding the facts to be as above set forth, Mr. Justice Boteust, on behalf of the majority of the court, held that there was a question of fact for submission to a jury as to the defendant’s negligence, saying (p. 627): “ The jury was presented with ample evidence from which, pursuant to an adequate and appropriate charge, it could reasonably have found that defendant was negligent. It could have found from the circumstances of the case that there were accumulations of mud upon the floor, upon which plaintiff testified unequivocally that her heel had slipped; and that this constituted a dangerous condition which the defendant was under a duty to remedy. It could have found that defendant knew or should have known that it had rained heavily for a long time and that when the accident occurred the streets and sidewalks were still wet and muddy. Defendant knew that under such conditions patrons of the store tracked mud and water into the vestibule; and that when so moistened, with accumulations of mud upon it, the terrazzo floor became dangerously slippery. From its experience defendant knew measures had to be taken to protect the public and so had adopted rules requiring the porters to lay mats in the vestibule on rainy days — a commonly accepted precautionary measure. Defendant therefore could reasonably have anticipated that an accident such as befell the plaintiff might occur. Accordingly, *557 whether or not defendant was negligent in failing to employ means readily available to avert the danger was a question of fact for the jury. ’ ’
The distinction between that case and this is that there a recovery was permitted because there the jury ‘ ‘ could have found that the defendant knew or should have known that it had rained heavily for a long time “ that under such conditions patrons of the store tracked mud and water into the vestibule; and that when so moistened, with accumulations of mud upon it, the terrazzo floor became dangerously slippery.”
In other words, there the defendant was chargeable with notice of the occurrence of the specific event which made the floor dangerous, to wit, the rain. It was the existing rain which acted as a catalyst for the ensuing chain of events. Here the defendant was not chargeable (except through the testimony of plaintiff’s brother) with knowledge of the existence of the catalyst, the leaf, which allegedly caused plaintiff’s fall. Therein lies the distinction between the two cases.
In Burke, the discussion by the court dealt with a motion to dismiss a cross complaint made by the third-party defendant. The language of the court must be read and interpreted in light of the question under discussion. So read, the case is not an authority for the plaintiff. It merely holds (p. 132) that under the pleadings between the plaintiff and the defendant, the latter is charged with “ active negligence, and at best it was, under its third-party complaint, a joint tort-feasor with the third-party defendant.” Since there is no recognizable cause of action by an active joint tort-feasor against another tort-feasor, the court there dismissed the cross complaint.
Aside from the above, the plaintiff has not cited any authority for her contention that knowledge of a defendant that from time to time debris is dropped on the floor by customers constitutes notice as a matter of law in a specific case, nor has the defendant in its brief submitted any authorities in support of the instructions of the court on the precise point, to wit, that such knowledge does not constitute notice of an existing dangerous condition as a matter of law. Independent research, however, has revealed that there are authorities in support of the position taken by the court upon the trial. In Sikora v. Apex Beverage Corp. (282 App. Div. 193, affd. 306 N. Y. 917) the plaintiff had a recovery at Trial Term which was taken away from him by the Appellate Division and his complaint dismissed. The reversal and dismissal were unanimously affirmed by the Court of Appeals.
*558 In that case, Presiding Justice Peck states the facts as follows (pp. 194, 195): “ Plaintiff, walking down a ramp in a subway station, slipped and fell in front of a soda vending machine owned and operated by defendant corporations. He observed that the surface where he fell was wet with a sticky substance and that the wooden platform on which the vending machine rested was also wet. Presumably, the wetness was due to the beverage leaking from the machine or being spilled by a patron. * * * Wetness caused by patrons spilling the beverage was apparently not uncommon. ’ ’
In determining that plaintiff could not hold his recovery and that his complaint would have to be dismissed as a matter of law, the court said (p. 195): “Notice of the condition, which was thus required, was of an existing wetness. We think there was failure of proof of such notice. There was no evidence as to how long the particular wetness had existed and there was no basis for finding, therefore, that it had existed for a sufficiently long time for defendants to remedy it in the exercise of ordinary care. ’ ’ (Italics added.)
Though the facts are different, the point of law at issue and there determined, is undistinguishable from the question of law in our case. There ‘ ‘ wetness caused by patrons spilling the beverage was apparently not uncommon.” Here the dropping of leaves and vegetables by patrons upon the floor also was apparently not uncommon. Yet in Sikora the court held that the notice which was required was notice “of an existing wetness ” and it disavowed a right to recovery merely because the defendant had general notice that from time to time patrons spilled the beverages from its machines on the floor of the platform. Similarly, this court instructed the jury as a matter of law that notice of the condition here required was of an existing leafy condition and that the general knowledge of the defendant of the propensity of its customers to drop such leaves did not take the place of the specific notice required to enable the plaintiff to recover.
Our independent research has not discovered any case in this State dealing with the precise issue involved in so-called supermarkets but in Bosler v. Steiden Stores (297 Ky. 17, 21, 22) the Court of Appeals of Kentucky, which involved the slipping by a customer on a pea pod in a self-service store said: “ We have found no case, nor has any been cited to us, where the court held in a case of this class that there should be a submission of the issue of defendant’s negligence to the jury when there was no proof whatever, circumstantially or otherwise, of the length of time that the complained of debris causing the danger had *559 remained on the floor devoted to the use of customers. * * * It is a commonly known fact that customers of what has become to be known as ‘ food Chain Stores ’ wait upon themselves from counters or bins where the merchandise has been placed in a manner to give them easy access to it. They fill their own packages and it is almost inevitable that some portion of some articles might be dropped on the floor upon which an immediately succeeding customer might step, producing his fall and consequent injury. It would therefore require almost a constant standby employee or servant to remove such litter upon the departure of each customer and to watch him in order to discover whether any such thing happened. Such a requirement would inevitably make the store keeper an insuror and which burden the law declines to thrust upon him. ’ ’
I believe that the Bosier case correctly states the law applicable to the situation at bar. My charge to the jury was directly in line with the law there enunciated. Accordingly, the motion of the plaintiffs to set the verdict aside is denied. The plaintiff may have an exception.
Ten days’ stay and 30 days to make a case.