**Grace SCOTT and George Scott, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 5930.**

United States District Court
N. D. New York.

Dec. 6, 1957.

Muserlian & Furtch, Syracuse, N. Y., for plaintiffs, Theodore Furtch, Syracuse, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for defendant, George W. Seager, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

BRENNAN, Chief Judge.

This is an action brought under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., by Grace Scott to recover for personal injuries sustained, and by her husband, George Scott, to recover for medical expenses and loss of his wife's services by reason of an accident which occurred on January 6, 1954 at Syracuse, N. Y.

The pertinent facts are sufficiently disclosed in the findings of fact set out below.

1. That at all the times hereinafter mentioned, the defendant maintained and controlled as lessor the premises known as the Chimes Building situated at a corner of South Salina Street and West Onondaga Street in the City of Syracuse.

2. That at all times hereinafter mentioned, the premises known as the Chimes Building was maintained and operated as an office building, occupied by federal agencies and other individual lessee tenants.

3. That at all the times hereinafter mentioned, there were two separate entrances from the public highway to said building, available to and used by the occupants of said building, their employees and those members of the public seeking to transact business therein.

4. That the entrance from West Onondaga Street provided a passageway through doors at the sidewalk level into an areaway or lobby through which persons passed through three doors to an inner lobby known as the elevator lobby.

5. That the area between the sidewalk and the elevator lobby was known as the lobby or vestibule and consisted of an open area approximately eleven feet ten inches wide, fronting on the sidewalk and extending approximately twenty-three feet in depth to the doors which lead to the elevator lobby. (Said area will be referred to herein as the vestibule, to distinguish same from the inner or elevator lobby).

6. That the floor of said vestibule (except for eight inches adjacent to the side wall which was of tile or marble construction) was covered with a material known as terrazzo which was smooth on the surface and became slippery when wet or covered with moisture. The floor surface sloped from the rear to the front a total of approximately five and three-quarter inches or about one-quarter inch per foot. On either side of the lobby, at the front and rear thereof, were pillars which projected into the areaway approximately twenty inches.

812

7. On January 6, 1954, it had snowed intermittently during the day with some rain interspersed. On that date and prior thereto interwoven link mats were placed upon the floor of said lobby, extending from the sidewalk entrance doors the length of the vestibule to the three doors which lead to the elevator lobby. Said mats covered an area of eight feet six inches, leaving approximately twenty inches on either side of the lobby exposed. The mats, as they were laid, covered the center area of the lobby from pillar to pillar.

8. On January 6, 1954 at about 3 o'clock p.m., plaintiff, Grace Scott, entered the Chimes Building from the West Onondaga Street entrance for the purpose of transacting business with one of the occupants of the Chimes Building.

9. At the time, she was wearing galoshes and shoes with a medium height heel and was carrying a pocketbook and envelope or paper folder.

10. After her entry into the vestibule, she proceeded to walk towards the rear, with the intention of passing through the doors leading to the inner or elevator lobby. The course taken by her was over and upon the mats, heretofore described, and near the righthand edge thereof as plaintiff proceeded. When she had reached a point about halfway between the entrance doors and the doors leading to the inner lobby and about opposite a grating or heating facility, located in or near the wall of the vestibule to plaintiff's right, the doors of the inner lobby opened. Some seven or eight people passed therefrom into the vestibule and proceeded to walk towards the plaintiff. At the above point, the plaintiff stepped from the mat onto the exposed portion of the terrazzo floor, whereupon her "feet went out from under" her. She fell to her knees and substantially came to a sitting position with her feet doubled under her.

11. That as the result of the accident, above described, the said plaintiff sustained personal injuries and her husband, plaintiff George Scott, became liable for medical expenses on account of his wife's said injuries.

12. That after the occurrence or accident, above described, the clothes of plaintiff, Grace Scott, were wet and soiled.

### Discussion.

There is no material dispute as to the physical layout of the vestibule; the existence and location of the mats; the weather conditions and the actual happening of the accident itself. The damages resulting therefrom may be said to be in dispute but it is unnecessary to discuss same until the plaintiffs' rights to recover are determined.

Plaintiff expressly disavows any contention that the vestibule floor was improperly constructed. Dependence is placed upon the failure of the defendant to use the reasonable care required to protect an invitee or business visitor from injury. The substance of plaintiffs' contention is that the defendant permitted snow and slush to be carried into the vestibule by persons entering the building, thereby permitting moisture or dampness to cover the terrazzo floor and its exposed portion, creating or permitting a dangerous condition. The further contention is made that the mats were insufficient in that they failed to cover the twenty inch area on the sides of the lobby described in the above findings.

Concisely stated, the defendant's contention is to the effect that no negligence is shown. It is contended that there is no evidence of prior accidents which would put the defendant on notice of a dangerous condition; that there is no evidence of any accumulation of moisture or foreign substance at the place where the accident occurred; that there was no actual or constructive notice of the existence of any condition which would require affirmative action on the part of the defendant to eliminate same. Defendant further contends that the mats, as placed in the vestibule, provided a safe passageway for pedestrians entering or leaving same and that said mats covered the floor area sufficiently so that

no reasonable person would anticipate that a pedestrian would leave same and continue his or her passage over the unprotected area.

█ The existence of actionable negligence on the part of the defendant herein is to be determined in accordance with state law. In determining same, the many cases cited by both parties have been examined and it is fair to say that the decisions therein are not easily reconciled. This is not unexpected because negligence is gauged by circumstances and conditions which rarely if ever exactly coincide in any two given litigations.

Certain general principles, however, are too well established to require discussion or the citation of a great number of authorities for their support.

█ The owner or party in control of premises to which the public is invited owes to a business visitor the duty to use reasonable care to keep the premises in such a condition so as not to unreasonably expose patrons to danger or injury. Greene v. Sibley, Lindsay & Curr Co., 257 N.Y. 190, 177 N.E. 416; Tryon v. Chalmers, 205 App.Div. 816, 200 N.Y.S. 362.

█ The reasonable care required is measured by the ability of the reasonably prudent man to anticipate danger under conditions known or reasonably anticipated to exist. Lane v. City of Buffalo, 232 App.Div. 334, at page 338, 250 N.Y.S. 579, at page 583.

█ The maintenance of smooth surfaces or floors does not in itself constitute negligence. Nelson v. Salem Danish Lutheran Church, 270 App.Div. 1030, 63 N.Y.S.2d 145; Tryon v. Chambers, supra.

[5, 6] Failure to guard against the remote possibility of injury is not negligence. The prior safe use of the floor militates against an imputation of negligence. Nelson v. Salem, supra; Tryon v. Chambers, supra; Wildman v. City of New York, 254 A.D. 591, 3 N.Y.S.2d 37.

█ Where the structure or offending floor is not in itself inherently danger-ous, actual or constructive notice to the proprietor as to a dangerous condition is required as a basis of liability. Miller v. Gimbel Bros., 262 N.Y. 107, 109, 186 N.E. 410; Sikora v. Apex Beverage Corp., 282 App.Div. 193, 122 N.Y.S.2d 64; Cohen v. Elmont Cemetery Inc., 262 App.Div. 1029, 30 N.Y.S.2d 354; Dolan v. Hotel Campbell, Inc., 260 App. Div. 872, 22 N.Y.S.2d 915; Wentz v. J. J. Newberry Co., 245 App.Div. 790, 280 N.Y.S. 824.

█ It might be well at this point to dispose of plaintiff's contention that the failure to cover the vestibule floor from wall to wall with mats or protective material was in itself negligence. I find no authority supporting any such contention and same would seem to be contrary to the accepted practice followed in public buildings. There is no proof of the insufficiency of the mats to provide safe passage for customers. There is no evidence of crowding or pushing. The presence of some seven to nine people in the vestibule at the time of the accident shows clearly that there was plenty of room for all to pass over the mats in the exercise of the courtesy ordinarily to be expected when pedestrians meet, passing in opposite directions. Such a drastic extension of liability on the part of the proprietors of public buildings is not warranted by the facts or by precedent.

The first difficulty in plaintiff's case is that reliance rests upon the happening of the accident itself. The plaintiff's description of her fall, even inferring that the floor was wet, is so similar to that of the plaintiff in Miller v. Gimbel Bros., supra, that a distinction can hardly be made. See Pignatelli v. Gimbel Bros., 285 App.Div. 625, 140 N.Y.S.2d 23, affirmed 309 N.Y. 901, 131 N.E.2d 578. See also Diable v. City of Syracuse, 295 N.Y. 856, 67 N.E.2d 259; Antenen v. New York Telephone Co., 271 N.Y. 558, 2 N.E.2d 693.

Plaintiffs seem to depend for a recovery on the decisions in Pignatelli v. Gimbel Bros., 285 App.Div. 625, 140 N. Y.S.2d 23; Gluck v. Sunapee Realty

Corp, 257 App.Div. 658, 15 N.Y.S.2d 99, and Thompson v. Palladino, 250 App.Div. 817, 294 N.Y.S. 461. In each of these cases, the defendant could have been charged with notice of a dangerous condition because floor mats were provided to eliminate same but they were not in place at the time of the accidents.

Principally, the plaintiffs rely upon the decision in Pignatelli v. Gimbel Bros., supra. The defendant seems principally to rely upon Miller v. Gimbel Bros., supra.

The plaintiffs' reliance is misplaced. In addition to the absence of the mats customarily provided, the evidence shows that Mrs. Pignatelli slipped upon an accumulation of mud, a condition which defendant should have known would exist.

 Here the reason for Mrs. Scott's fall is left to the conjecture that water or moisture may have passed under the edge of the mat on to the exposed terrazzo floor. It is true that after the accident, Mrs. Scott's clothes were wet and soiled but for all that is shown in the evidence, she may just as well have slipped because of moisture or a foreign substance on her galoshes. Melted snow or water brought into the vestibule by pedestrians would ordinarily gather or move in the direction in which the floor sloped. The accident happened about eleven and one-half feet from the entrance and since no actual notice of a dangerous condition is claimed, the plaintiffs must depend entirely upon constructive notice in order to recover here. I see nothing in the evidence which would warrant such a finding. (See discussion of the requirements of constructive notice in the recent case of Greenidge v. Great Atlantic & P. Tea Co., 7 Misc.2d 551, 164 N.Y. S.2d 831.) This, together with the facts that the mats were in place; that no accumulation of water at the place where Mrs. Scott fell, is shown, the long use of the vestibule without previous accidents, all lead to the conclusion that the plaintiffs have failed to sustain the burden imposed and that there is no sufficient evidence to warrant a finding of action-able negligence on the part of the defendant. Spaulding v. Christakos, 269 App.Div. 909, 56 N.Y.S.2d 372, affirmed 295 N.Y. 973, 68 N.E.2d 55.

The additional finding is made that plaintiffs have failed to establish negligence on the part of the defendant at the time and place of the accident described herein and it is concluded that the defendant is entitled to judgment dismissing the complaint, and it is

So ordered.