Anne SPAGNOLIA and Augustine
Spagnolia, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. CIV–82–1002T.

United States District Court,
W.D. New York.

Nov. 27, 1984.

Mousaw, Vigdor, Reeves, Heilbronner & Kroll, Rochester, N.Y. (Donald A.W. Smith, Rochester, N.Y., of counsel), for plaintiffs.

Salvatore R. Martoche, U.S. Atty., Rochester, N.Y. (Frank P. Geraci, Asst. U.S. Atty., Rochester, N.Y., of counsel), for defendant.

## DECISION AND ORDER

TELESCA, District Judge.

### HISTORY OF THE CASE

This case was tried by the Court without a jury on November 20 and 21, 1984. It was stipulated by the parties that the issue of liability would be tried first pursuant to Federal Rules of Civil Procedure 42(b). Jurisdiction of this case is conferred upon this Court pursuant to 28 U.S.C. § 1346(b).

### THE FACTS

The plaintiff, Anne Spagnolia, who on April 28, 1980 was 58 years of age, and married to the plaintiff, Augustine Spagnolia, slipped and fell in the customer area of the Ridgemont Plaza Post Office and as a result thereof claimed to be injured. This decision will deal only with the question of liability and therefore no attention will be given to her injuries.

It had been raining that day and evidence revealed that as of 10:00 A.M., .34 inches of rain fell. It was necessary for Mrs. Spagnolia to walk from her parked car, approximately 60 feet, to the post office building and in so doing walked over a wet surface and possibly through some small puddles. The floor of the post office is composed of individual inlaid blocks of quarry tile, red in color, non-glazed, consisting of a vitrified clay product. The plaintiffs' expert, architect Martin Rose, disagreed with previous testimony that it was terrazzo tile, but rather it is a quarry tile. The architect's opinion was that this tile, although highly recommended and used for very busy pedestrian locations because of its excellent durability and ability to be kept clean, nonetheless is slippery when wet.

The plaintiff testified that she entered the post office at about 10:00 A.M. and went to Window number 2 to purchase stamps. She then walked across the post office area to a table to address her mail, and to determine the zip code of a particular address. Unable to find the zip code in the books available, she started back towards the customer window to ask for as-

sistance. A conversation ensued, she turned, "and my feet slipped out from underneath me straight up and I fell". No other customers were present when she fell and she didn't see any wet spots on the floor before falling. However, as she lay on the floor, she noticed there were other footprints made by wet shoes, but no puddles of water.

She was wearing what are commonly known as "clogs", which are shoes formed from a solid piece of wood and a partial leather covering over the forepart of the shoe. They do not have any heel support. The sole is made of a rubberized material located over the instep of the shoe and the heel is of a neolite composition. Plaintiff testified that the heel had been replaced since she purchased the shoes, but the sole had not.

Jean Baxendale, a postal window clerk, saw the plaintiff fall. She claimed that the plaintiff twisted and "seemed to fall out of her shoes" and fell to the floor. She estimated that approximately 20 to 30 other customers had come into the building earlier that day, but that the floor was dry. Gloria DiCesare Montione was the postal window clerk who had waited on the plaintiff and sold her the stamps. She testified the floor was dry prior to the accident and if it had been wet, customarily they would notify the manager who would then mop the floor. Emmanuel Bertola, the manager of the post office, did not witness the accident but was summoned to her aid by the employees after she fell. He saw the plaintiff when she was lying on the floor and called an ambulance. The plaintiff stated to Mr. Bertola, "I slipped on your slippery floor." There was a mat located in the vestibule area (where the post office boxes were located), but no mat was located in the customer area where the plaintiff fell. He estimates that approximately 20 customers had come in that morning prior to the plaintiff entering the premises and there was no need to mop the floor because the floor was dry. Photographs were introduced showing a portable sign located in the vestibule area "Caution wet floors" which, according to Mr. Bertola, was placed out towards the entrance doors into the customer area by the maintenance people when the floors were washed. The sign was kept off to the side on this particular day because the floors had not been serviced by the maintenance people. The floors had been washed on the previous Saturday and this accident took place on Monday, a full day and a half later.

The plaintiff brought to the Court's attention a publication of the Post Office Department "Floors Care and Maintenance" (published September, 1969) which instructs and directs post office employees concerning the maintenance of post office facilities. It states in part that "during rainy or snowy weather, give repeated attention to mopping up water tracked into entrances and lobbies. Place 'Wet Floor' signs—at entrances. Place safety matting in vestibules, lobbies, and employee entrances to avoid slipping hazards." (Part II, 'Safety', page 3).

The plaintiff was unable to state that the floor was wet prior to the accident, but did notice when she returned home that the shawl she was wearing was wet as the result of lying on the floor of the post office subsequent to her fall. And as stated previously, she recalled (while lying on the floor) seeing other footprints left on the floor by customers who had previously used it that morning. Against this claim, all three Government witnesses testified that the floor was dry on the morning of the accident.

It is inconceivable to find that the floor of the post office was "dry" the morning of the accident as testified to by the Government's employees. I do find, however, that there were no puddles or standing accumulations of water on the floor in the area in which the plaintiff fell that morning. Clearly, the bottoms of her shoes were wet as the result of her walk across a wet parking lot before entering the post office.

## DISCUSSION

Plaintiff argues that the negligence of the defendant consisted of the failure to

provide water absorbent floor mats, or to take adequate measures to prevent the accumulation of water on the floor during the rainy day when the accident occurred. Defendant has taken the position that such facts, standing alone, do not constitute negligence under New York law.

This Court is obligated to apply the law of the state where the alleged negligent acts occurred and therefore New York law applies in this case. 28 U.S.C. Section 2674.

For a time, defendant's position was free from doubt under New York law. In *Miller v. Gimbel Brothers, Inc.*, 262 N.Y. 107, 108–9, 186 N.E. 410 (1933), (plaintiff fell on a smooth, sloping floor which had become slippery when wet) the Court of Appeals made the observation that "the owner of a store ... cannot prevent some water and mud being brought into an entranceway on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions".

That rationale was extended slightly further in *Holmes v. William Hengerer Company*, 303 N.Y. 677, 102 N.E.2d 836 (1951), where the plaintiff fell on a wet floor in a department store on a snowy day. On the day of the accident, the vestibule of the store was covered with a rubber mat, but there was no mat in the interior of the store where the accident occurred. Plaintiff argued "that defendant had been negligent in allowing slush to accumulate in the interior of the store, in failing to place mats inside the store or to place them in the proper places and in failing to have a porter on duty or one who properly discharged his duties". *Id.*, 303 N.Y. 678, 102 N.E.2d 836. The Court of Appeals affirmed a judgment which reversed a trial verdict for the plaintiff, holding that such facts failed to establish defendant's negli-

gence. *Accord, Schultz v. United States*, 203 F.Supp. 941 (E.D.N.Y.1962). *See also, Scott v. United States*, 158 F.Supp. 810, at 814 (N.D.N.Y.1957).

Several years later, however, the precise scope of the *Miller* decision was thrown into some doubt by a case involving the same defendant, *Pignatelli v. Gimbel Brothers, Inc.*, 309 N.Y. 901, 131 N.E.2d 578 (1955). In fact, the plaintiffs in those two cases were injured in different entrances to the same department store, under almost identical conditions. In *Pignatelli*, as in *Miller*, the plaintiff entered defendant's store on a rainy day, and slipped on a sloped terrazzo floor between the street entrance and a revolving door. The only additional fact present in *Pignatelli*[1] was apparently the fact "that defendant customarily placed rubber mats, which were kept in a cabinet in the vestibule, on the floor during a rainfall but such mats were not in place on the floor at the time plaintiff slipped". *Id.*, 309 N.Y. 902, 131 N.E.2d 578. Perhaps on the basis of that factual distinction, the Court of Appeals held, without any written opinion, that plaintiff had made out a *prima facie* case, and upheld a jury verdict for plaintiff.

These decisions created a longstanding confusion under New York law as to whether, or when, a defendant would be liable for failing to use floor mats on rainy and snowy days. In an effort to reconcile the two leading decisions, it was occasionally suggested that liability would turn on whether the defendant had been in the custom of providing the mats which were absent on the day of the accident. *See*, for example, *Morgenstern v. F.W. Woolworth and Company*, 19 Misc.2d 739, 741, 186 N.Y.S.2d 747 (S.Ct. Nassau County 1959); *Scott v. U.S., supra*, 158 F.Supp. at 814.

This longstanding ambiguity in New York negligence law has now been resolved by a recent decision which is controlling in the present case. In *Madrid v. City of*

---

**1.** In the *Miller* case, decided 22 years earlier, there also had been no mat on the floor at the time of the accident, but there was apparently no evidence that Gimbel Brothers had observed the custom of using rubber mats at that time.

*New York,* 42 N.Y.2d 1039, 399 N.Y.S.2d 205, 369 N.E.2d 761 (1977), the plaintiff was injured when she fell on the wet, uncovered terrazzo floor of a hospital entrance on a rainy morning. The trial judge dismissed her complaint at the conclusion of plaintiff's case, and the Appellate Division affirmed, citing *Miller v. Gimbel Brothers, supra.* In dissent, one judge outlined the evidence most favorable to plaintiff's claim.

> The plaintiff ... was injured when she slipped on the wet terrazzo floor at the inclined entrance to the clinic. On previous rainy days a mat was placed on the terrazzo floor, but it was missing on the day of the accident. Plaintiff's expert testified that it was the usual custom to use mats on rainy days to prevent accidents and that this omission caused the accident. The record indicates that it had been raining for a considerable length of time before the accident and that when she fell, plaintiff's suit was wet from top to bottom. The defendants had recognized the dangers involved and had followed the usual custom in such cases by placing a mat at the entrance on rainy days. [53 A.D.2d 517, at 517–18, 383 N.Y.S.2d 621.]

Nevertheless, the Court of Appeals affirmed, citing *Miller v. Gimbel Brothers,* reasoning that "the facts presented in this record, assessed in the light most favorable to plaintiff, fail to reveal any evidence of notice, either actual or constructive, necessary to cast respondents in damages". 42 N.Y.2d at 1039, 399 N.Y.S.2d 205, 369 N.E.2d 761 (citations omitted). In so doing, the Court of Appeals clearly established that the failure to use mats on slippery floors on rainy days does not necessarily constitute negligence, even where the defendant customarily observes such a practice but failed to do so on the day of the accident. Therefore, plaintiff's urging for

a finding of negligence on behalf of the defendant is simply not substantiated by the law applicable to the facts of this case.[2]

### CONCLUSION

I therefore hold that the plaintiff has failed to establish actionable negligence sufficient to impute responsibility to the Government. Therefore, the plaintiff's complaint is dismissed and I direct the Clerk to enter judgment accordingly pursuant to Fed.R.Civ.P. 58(1).

ALL OF THE ABOVE IS SO ORDERED.

---

2. In at least one respect, the evidence of negligence in the present action is even weaker than the plaintiff's case in *Madrid,* where the Court of Appeals upheld the dismissal of the complaint. In *Madrid,* the defendant had failed to observe its customary practice of placing a floor mat in a hospital entrance on rainy days. In

the present case, however, the defendant neglected to use floor mats only in the interior of the post office; plaintiff concedes that there was a mat in the entrance to the post office, which presumably decreased the amount of moisture brought in by customers.