**Jacqueline HOLLAND, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 95 Civ. 1587 (JFK).**

United States District Court,
S.D. New York.

Jan. 29, 1996.

---

The Robert D. Gould P.C. Law Firm, New York City (Melvin Saunders, of counsel), for Plaintiff.

Mary Jo White, United States Attorney for the S.D. New York, New York City (Wendy Schwartz, Deborah Yeoh, Asst. U.S. Attys., of counsel), for Defendant.

KEENAN, District Judge:

The action was tried by the Court, without a jury, pursuant to 28 U.S.C. § 2402. The case was brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

Plaintiff slipped and fell on Wednesday, March 17, 1993 at or around 4:58 p.m. in the United States Post Office at 5517 Broadway, Bronx, New York, the Kingsbridge Branch. Plaintiff was 48 years old on March 17, 1993. At the time, she weighed approximately 160 pounds. Plaintiff was, and still is, a teacher at Junior High School 145 at 1000 Teller Avenue, Bronx, New York.

Plaintiff was driven to the Post Office by her work colleague, Jacqueline Watkins, for the purpose of purchasing stamps. Ms. Watkins waited in the car during the time that plaintiff was in the Post Office. Ms. Watkins never entered the Post Office. March 17, 1993 was a day on which it alternately snowed and rained.

Plaintiff entered the Post Office and went to the customer waiting line. The floor under the customer waiting line was covered by a mat. Inside the entryway, at the entrance to the customer waiting line, there was a sign stating "Caution—Wet Floor." The sign is Defendant's Exhibit A. When she reached the front of the waiting line, plaintiff proceeded to a postal window. The clerk at that window directed plaintiff to another window nearby.

While walking from the first window to the next, plaintiff slipped and fell. The two windows and the area in between where plaintiff fell are pictured on Plaintiff's Exhibit 1. The area where plaintiff fell was wet and was not covered by a mat. Before she fell, plaintiff was looking straight ahead and did not look at the floor. The lighting in the Post Office was normal and plaintiff had no trouble seeing. Plaintiff did not lose consciousness at any time.

Plaintiff was driven from the Post Office to Lawrence Hospital in Bronxville, New York by Ms. Watkins. Plaintiff was examined at Lawrence Hospital and x-rays were taken. Approximately two and one-half hours later, plaintiff was instructed to go home and rest, to place warm compresses on her neck, and to stay home from work for one or two days. She was told to take Motrin for pain.

Two days later, on March 19, 1993, plaintiff consulted an attorney with respect to her fall at the Post Office. At no time after the fall did plaintiff take any prescription pain medication. She took Tylenol. Plaintiff's attorney referred plaintiff to Dr. Mark M. Kesten, who examined the plaintiff on March 25, 1993. Plaintiff's attorney also referred plaintiff to Dr. Harry Citronenbaum at Central Medical Rehabilitation Services P.C. Dr. Lock at Central Medical Rehabilitation Services P.C. examined the plaintiff on March 25, 1993, the same day she was examined by Dr. Kesten.

Lumbar and cervical electromyography ("EMG") tests were performed on plaintiff by Dr. St. Hill at Central Medical Rehabilitation Services P.C. on May 11, 1993. The lumbar EMG showed normal latencies and velocities. The cervical EMG showed normal latencies, velocities and F–waves, except the right median nerve had slightly increased latencies. MRIs were recommended, but were not performed. A cat-scan was scheduled, but was not performed. Follow-up x-rays were scheduled, but were not taken.

Plaintiff had further appointments with Dr. Kesten on the following dates: April 8, April 29, May 6 and May 13, 1993. Plaintiff did not see Dr. Kesten after May 13, 1993.

Plaintiff had further appointments with Central Medical Rehabilitation Services P.C. on the following dates: April 2, April 6, April 24, April 30, May 20 and June 3, 1993. Plaintiff did not go to Central Medical Rehabilitation Services P.C. for treatment after June 3, 1993. Plaintiff did not seek or receive any medical services or physical therapy with respect to her alleged injuries after June 3, 1993.

Plaintiff returned to work approximately four weeks after her fall and did not lose any regular wages as a result of her fall.[1]

In all, four witnesses testified at trial. Plaintiff was the only witness on her side. Defendant called three postal workers, including Allen Stern, the then Branch Manager at the Kingsbridge station. Unfortunately, the recollections of all four were seriously flawed as to the specific events of the day in question. Plaintiff testified that "I just don't recall seeing the sign that day." (Tr. 22). She didn't remember either way whether the caution sign was present or absent, although the parties stipulated in the Joint Pretrial Order to its being present (para. 7). Further she testified that, by the time she left school with her colleague, just before arriving at the Post Office "it was pretty clear, it cleared up. It wasn't raining." (Tr. 17). This is contradicted by the stipulated fact in paragraph one of the Joint Pretrial Order, and the official Weather Bureau Report for that day, which is Government Exhibit B, which showed that it snowed and/or rained all day.

The three postal workers were unable to remember the day in question at all. However, all three of them, Cynthia Gonzalez (Tr. 5), Maryanne Wright (Tr. 64) and Mr. Stern (Tr. 142) testified that it was Standard Operating Procedure on rainy and snowy days to have the customer area floor mopped. Mr. Stern testified that it was customary to have it mopped every half hour on bad weather days. The Court accepted their testimony under Fed.R.Ev. 406 and found it credible.

There was no testimony from any Doctor.

### Conclusions of Law

■ In a FTCA case, Government liability for negligence is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). *See Molzof v. United States,* 502 U.S. 301, 303–05, 112 S.Ct. 711, 714, 116 L.Ed.2d 731 (1992); *Hess, Administrator v. United States,* 361 U.S. 314, 317–18, 80 S.Ct. 341, 344–45, 4 L.Ed.2d 305 (1960); *Chen v. United States,* 854 F.2d 622, 626 (2d Cir.1988). Thus, New York law applies. In New York, negligence is conduct below that of a reasonably prudent person under similar circumstances judged at the time of the conduct at issue. *Paulison v. Suffolk County,* 775 F.Supp. 50, 53 (E.D.N.Y.1991).

■ Plaintiff must prove by a preponderance of the evidence that: (1) the Government owed a duty to her; (2) the Government beached that duty by its negligent

---

1. All of the facts to this point are agreed to by both parties.

conduct; and (3) as a result of that beach, plaintiff suffered an injury. *Paulison*, 775 F.Supp. at 53; *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531, 535 (1981).

The rule is that "[t]he owner of a store must take reasonable care that his customers shall not be exposed to danger through conditions in the store or at the entrance which he invites the public to use." *Miller v. Gimbel Bros., Inc.*, 262 N.Y. 107, 108–09, 186 N.E. 410 (1933). But the store-owner "cannot prevent some water and mud being brought into an entranceway on a rainy day." *Schultz v. United States*, 203 F.Supp. 941, 943 (E.D.N.Y.1962) (quoting *Miller*, 262 N.Y. 107, 186 N.E. 410) and "he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous...." *Schultz*, 203 F.Supp. at 943. For our purposes, the Post Office is a store.

There is no contention by plaintiff that the Post Office was inherently dangerous, although admittedly the Government recognized a duty to warn postal customers of any slippery conditions of which the Government was aware, and to take reasonable precautions to cure any such known conditions. The plaintiff, however, has utterly failed in her obligation to prove, by a preponderance of the evidence, that the Government breached that duty.

The cases essentially are uniform which have considered the United States's liability under the FTCA in customers' slip-and-fall cases arising from injuries suffered when slipping on wet post office floors during or after a rainstorm. Even in cases where no sign was posted, no mats or runners were provided, and recommended mopping procedures were not followed, the courts have repeatedly found that the Government did not breach a duty to postal customers because a proprietor's duty to warn does not extend to obvious dangers.

'Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor.'

\* \* \* \* \* \*

'Everybody knows that the hallways between the outside doors of such buildings and the ... business counters inside the building during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all post offices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.'

*Faircloth v. United States*, 837 F.Supp. 123, 128–29 (E.D.N.C.1993) (quoting *S.S. Kresge Co. v. Fader*, 116 Ohio St. 718, 723, 158 N.E. 174, 175 (1927)).

In *Spagnolia v. United States*, 598 F.Supp. 683 (W.D.N.Y.1984), the plaintiff, a 58 year old woman, slipped and fell on a rainy day on a tile floor in the customer area of a post office. Although there was a mat in the outer lobby, the evidence showed that there was no mat in the area where the plaintiff fell, that a wet floor sign that the defendant possessed had not been in place, and that the floor had not been mopped. Nevertheless, the court found that a finding of negligence was not substantiated. The Court specifically noted that under New York law, "failure to use mats on slippery floors on rainy days does not necessarily constitute negligence, even where the defendant customarily observes such a practice but failed to do so on the day of the accident." *Spagnolia*, 598 F.Supp. at 686 (citing *Miller v. Gimbel Brothers*, 262 N.Y. 107, 108–09, 186 N.E. 410 (1933), and *Madrid v. City of New York*, 42 N.Y.2d 1039, 399 N.Y.S.2d 205, 369 N.E.2d 761 (1977)).

In *Hess v. United States*, 666 F.Supp. 666 (D.Del.1987), the plaintiff, a 50 year old wom-

an, slipped at approximately 4:30 p.m., on a rainy day, in the outer lobby of a post office, on a portion of tile floor exposed between two mats. Although the defendant post office possessed wet floor signs, no signs or other warnings were posted at the time of the accident. Nevertheless, the Court found that the plaintiff had failed to show that United States had breached its duty to maintain the lobby in a reasonably safe condition because "the floor's slippery condition was obvious and easily discoverable" by the plaintiff. *Hess*, 666 F.Supp. at 673.

The evidence here shows that defendant satisfied its duty in observing a reasonable course of conduct to warn and to protect its customers. The evidence shows the presence of the "Caution Wet Floors" sign and the floor runner, and that in this particular post office, standard mopping procedures were observed on wet days. Plaintiff has failed to rebut this evidence. Plaintiff therefore has failed to establish any negligence on the part of defendant.

### Conclusion

The Court finds that plaintiff has failed to establish any negligence on the part of defendant. The Court directs the Clerk of the Court to enter judgment in favor of defendant and thereafter to close this case and to remove it from the Court's active calendar.

**SO ORDERED.**