**Beverly TUTHILL, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 02 CIV. 2761(CM).**

United States District Court, S.D. New York.

July 2, 2003.

Steven A. Lipton, Larkin, Axelrod Trachte & Tetenbaum, L.L.P., Newburgh, NY, for Beverley Tuthill, plaintiff.

Sarah E. Light, United States Attorney, Southern District of New York, New York City, for United States of America, The United States of America, defendant.

## MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

Plaintiff Beverly Tuthill brings this action against defendant the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et. seq.*, to recover for injuries sustained when she allegedly slipped and fell on a patch of ice on the exit driveway of the West Point Visitor's Center parking lot. Defendant moves for summary judgment.

For the following reasons, defendant's motion is denied.

## FACTS

The following facts—undisputed unless otherwise noted—are relevant to defendant's summary judgment motion.

On January 16, 2001, at approximately 7:55 a.m., plaintiff Beverly Tuthill parked her car in the parking lot of the West Point Visitor's Center. [Tuthill Dep. 47]. At the time, Tuthill worked at the West Point Federal Credit Union ("Credit Union"), located on Main Street. The Visitor's Center opened at 9:00 a.m., and there were no West Point personnel present at the time of the accident. *Id.* at 50–51.

Leaving the parking lot, Tuthill walked down the left side of the exit driveway leading to Main Street, then crossed to the right side to walk on the sidewalk to get to the Credit Union. This was her usual path. *Id.* at 52. On the morning of the accident, there was no ice on the left side of the driveway. *Id.* at 54. Tuthill saw ice on the right side of the driveway. *Id.* She walked across the ice and fell at approximately 7:57 a.m. *Id.* at 59–60. Plaintiff claims she had no choice but to cross the ice because there was a large snow bank preventing her from crossing Main Street from the left side of the driveway. [Plaintiff's 56.1 Statement ¶¶ 12–13]. In addition, she claims it would have been unsafe for her to enter the roadway on Main Street from the left side of the driveway because the road was heavily traveled with vehicular traffic—a fact confirmed by her co-worker, Lynne Prokop. *Id.* at ¶ 11. However, Major David Dellinger, a witness to plaintiff's fall, claims that traffic on Main Street was sparse on the day of plaintiff's fall. [Dellinger Dep. 10].

Shortly before 8:00 a.m., Dellinger was driving along the West Point Highway when he observed Tuthill fall. Dellinger pulled over, assisted Tuthill into his car, and brought her to the Highland Falls Police Station. [Dellinger Dep. 11–15]. Dellinger claims that he saw that the ground near plaintiff's fall was moist, but he did not see any ice. *Id.* at 15. He also claims he saw sand in the moist areas and discovered sand and gravel in the passenger seat of his car after bringing plaintiff to the police station. *Id.* at 22–23.

A few minutes prior to plaintiff's fall, two other Credit Union employees, Prokop and Lorinda Lowe, had parked in the same parking lot. They arrived at the exit driveway at approximately 7:50 a.m. [Prokop Dep. 5, 12]. As they were walking down the driveway, Lowe slipped (but did

not fall) in the same spot at which Tuthill fell. *Id.* at 13. Both Lowe and Prokop believe Lowe slipped on ice, but neither actually saw the ice. [Prokop Dep. 13; Lowe Dep. 10–11]. Neither recalls whether or not she saw sand or salt on the exit driveway at that time. [Prokop Dep. 26; Lowe Dep. 19].

West Point has in place snow and ice removal procedures that are carried out by the Engineer Platoon on nights, weekends, and holidays, and by the West Point Department of Housing and Public Works ("DHPW") during the daytime. The Engineer Platoon executes snow and ice removal in accordance with USMA Reg. 420–8, "Snow Removal Priorities For Roads and Parking Lots," and "Engineer Platoon Snow Operations Standard Operating Procedure." [Johnson Decl. ¶ 4]. The exit driveway is in an area known as "New South Post," and when Engineer Platoon members plow and/or spread salt or sand in the area of New South Post, they do the same on the exit driveway. *Id.* at ¶ 7.

The Engineer Platoon keeps a Daily Staff Journal, in which it records plowing, salting, and sanding activities for a given day, as well as complaints regarding icy or hazardous conditions. *Id.* at ¶ 8. The Journal indicates that at 12:20 p.m. on January 15, 2001, the day before plaintiff's fall, Specialist Free of the Engineer Platoon salted and sanded the area of New South Post, completing these activities at 12:52 p.m. All salting and sanding activities for the day ended at 1:50 p.m. *Id.* at ¶ 10. At 5:15 a.m. on January 16, 2001, three members of the Engineer Platoon assumed duty for a "snow watch." A "snow watch" takes place when there is no active precipitation and the full Engineer Platoon is not required. The Journal does not show any snow or ice removal activity recorded on January 16, 2001 in the area of New South Post, nor any complaints concerning that area recorded on January 16, 2001. *Id.* at

¶ 13. Defendant concedes that there were no ice removal activities in the area of New South Post on the morning of January 16, 2001 prior to plaintiff's fall. [Defendant's Reply Memorandum 8].

## DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only factual disputes that might affect the outcome of the suit will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Under the Federal Tort Claims Act, the federal government has consented to be sued for negligence of its employees in circumstances where, if the United States were a private person, it would be liable to the claimant under the laws of the place where the negligence occurred. 28 U.S.C. § 1346(b)(1). Accordingly, the present case is governed by New York law.

■ To prevail on a negligence claim in New York, plaintiff must show by a preponderance of the evidence that (1) defendant owed her a duty of care, (2) defendant breached that duty, and (3) plaintiff was injured as a result of that breach. *Holland v. U.S.,* 918 F.Supp. 87, 89–90 (S.D.N.Y.1996). Defendant moves for summary judgment on two grounds: (1) defendant had no duty to protect plaintiff from an open and obvious condition, and (2) even if it did owe plaintiff a duty of care, it did not breach that duty because it

did not have actual or constructive notice of the icy condition.

Defendant also claims that it cannot be held liable on a theory of res ipsa loquitur. However, an absence of a genuine issue of material fact on that issue would not mandate summary judgment in its favor. I therefore decline to address it in this motion. The parties may present their arguments regarding res ipsa loquitur at the final pre-trial conference.

## I. *Open and Obvious*

█ Defendant argues that it did not have to alleviate an open and obvious danger that plaintiff could have avoided by reasonable care. While case law supports this assertion, *Pinero v. Rite Aid of New York, Inc.,* 294 A.D.2d 251, 743 N.Y.S.2d 21 (2002); *Garcia v. New York City Housing Authority,* 234 A.D.2d 102, 650 N.Y.S.2d 715 (1996), there is a factual dispute as to whether the ice was open and obvious. Thus, I cannot resolve this claim on a summary judgment motion.

█ The question of whether a hazard is open and obvious is normally one that goes to the jury unless only one possible conclusion may be drawn from the undisputed facts. *Pelman v. McDonald's Corp.,* 237 F.Supp.2d 512, 541 (S.D.N.Y.2003). In the instant case, witness testimony is conflicting over whether the ice was an open and obvious hazard, and this conflict precludes granting summary judgment for the defendant. Plaintiff claims she saw the ice prior to her fall. Plaintiff's co-workers, Prokop and Lowe, who walked across the same spot seven minutes prior to plaintiff's fall, claim they did not see ice, though Lowe slipped in the same spot as plaintiff

and both Prokop and Lowe believe Lowe slipped on ice. Dellinger, who aided plaintiff after her fall, claims he did not see ice, only some moist spots.

Defendant argues that plaintiff's testimony that she saw the ice prior to walking across it and falling (i.e., that she had actual notice of the ice) renders the ice open and obvious as a matter of law. It appears that defendant misinterprets the case law on this issue. The two cases defendant cites, *Nardi v. Crowley Marine Associates, Inc.,* 292 A.D.2d 577, 741 N.Y.S.2d 246 (2d Dep't 2002) and *Richards v. United States,* 170 F.Supp.2d 423 (S.D.N.Y.2001), merely hold that plaintiff's awareness of a hazardous condition may be a factor in determining whether or not the condition was open and obvious but awareness does not make a condition open and obvious as a matter of law.[1] In *Pelow v. Tri–Main Development,* 303 A.D.2d 940, 757 N.Y.S.2d 653 (4th Dep't 2003), defendant noticed a puddle of water in defendant's elevator, in which he subsequently slipped and fell. Even though the plaintiff was aware of the hazardous condition, the court refused to grant summary judgment to the defendant. The court explained: "[W]hether a condition was readily observable impacts on plaintiff's comparative negligence and does not negate defendant's duty to keep the premises reasonably safe. An open and obvious condition merely negates the duty to warn." *Id.* at 655. It is well settled that comparative negligence must be determined by a jury, and therefore cannot be decided on a summary judgment motion. *Louise B.G. v. New York City Bd. of Educ.,* 143 A.D.2d 728, 730, 533 N.Y.S.2d 293 (2d Dep't 1988).

---

1. In *Nardi,* the court held that "[l]iability ... will not attach when the allegedly dangerous condition complained of was open and obvious, particularly where the injured plaintiff was aware of it." 292 A.D.2d at 577, 741 N.Y.S.2d 246. And in *Richards,* the court granted summary judgment to defendant where plaintiff slipped on wet Post Office stairs, because plaintiff's knowledge of the *obvious* danger precluded defendant's liability under the Federal Tort Claims Act. 170 F.Supp.2d 423.

## II. Notice

■ In slip-and fall cases under New York law, a property owner or possessor is not liable unless he or she created the defect or had actual or constructive notice of its existence. *Voss v. D & C Parking,* 299 A.D.2d 346, 346, 749 N.Y.S.2d 76, 77 (2d Dep't 2002). Plaintiff does not claim defendant created the defect and, interpreting the evidence most favorably to plaintiff (the nonmoving party), plaintiff cannot prove actual notice. But a genuine issue of material fact exists regarding constructive notice.

### A. Actual Notice

■ Defendant establishes as a matter of law that it lacked actual notice of the icy condition where plaintiff fell. In *Byrd v. Church of Christ Uniting,* 192 A.D.2d 967, 969, 597 N.Y.S.2d 211 (3d Dep't 1993) (affirming grant of summary judgment to defendant), the court found no actual notice in an ice slip-and-fall case where defendant's personnel were not present at the time of the accident and defendant had not received any complaints concerning a hazardous condition. Here, no West Point personnel were present at the time of the accident. Furthermore, neither the Engineer Platoon nor the DHPW has any record of complaints concerning the exit driveway on the morning of the accident. Plaintiff offers no affirmative evidence that defendant had actual notice. Therefore, plaintiff cannot prevail on a claim of actual notice of the icy condition.

## III. Constructive Notice

■ In order for there to be constructive notice in a slip-and-fall case, the defect must have been visible and apparent and must have existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it. *Gordon v. American Museum of Natural History,* 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986). Alternatively, constructive notice may be attributed to a defendant who had actual notice of a recurring problem in the location the accident occurred. *Hirschman v. City of New York,* 193 A.D.2d 581, 582, 597 N.Y.S.2d 154 (1993). Finally, the issue of actual or constructive notice is irrelevant where defendant had a duty to conduct reasonable inspections of the premises and failed to do so. *Meyer v. State of New York,* 92 Misc.2d 996, 1000, 403 N.Y.S.2d 420 (1978).

In the present case, plaintiff cannot prove constructive notice based upon the *Gordon* standard. While there are factual disputes as to whether the hazard was visible and apparent, those disputes are immaterial, because plaintiff presents no evidence demonstrating that the ice was present for a sufficient length of time prior to plaintiff's fall to permit defendants to remedy the hazard.

■ However, plaintiff presents evidence that defendant had actual notice of a recurring ice problem at the location where she fell. Lowe, plaintiff's co-worker, claims that the area upon which she slipped was routinely slippery. [Plaintiff's 56.1 Statement ¶ 3]. Dellinger, who aided plaintiff after her fall, claims that he saw sand in the area of plaintiff's fall and found sand and gravel in the passenger seat of his car after bringing plaintiff to the police station. [Dellinger Dep. 21–23]. A jury could infer from this evidence that the icy condition was recurring and that defendants had actual notice of it because they knew it had to be treated with sand and gravel. *See Weisenthal v. Pickman,* 153 A.D.2d 849, 851, 545 N.Y.S.2d 369 (2d Dep't 1989).

■ A genuine issue of fact also exists as to whether defendant's inspections were unreasonable, which would render the issue of actual or constructive notice irrelevant. *See Watson v. City of New York,*

184 A.D.2d 690, 690, 585 N.Y.S.2d 100 (2d Dep't 1992) (citing *Meyer v. State of New York,* 92 Misc.2d 996, 1000, 403 N.Y.S.2d 420 (1978) (holding that when there is failure to inspect, constructive notice need not be proved)). In the present case, while it is undisputed that defendant had a duty to inspect for snow and ice, there is a question as to whether defendant's inspections were in fact reasonable. Defendant had detailed snow and ice inspection and removal procedures in place and these procedures were followed on the day of plaintiff's fall. However, whether or not these inspections were reasonable is a question for a jury to decide.

CONCLUSION

Defendant's motion for summary judgment is denied.

This is the decision and order of the Court.