Lee PAULISON, Jr., Lee Paulison, Sr., and Linda A. Paulison, Plaintiffs,

v.

SUFFOLK COUNTY and Town of Brookhaven, Defendants.

No. CV 89–2441.

United States District Court, E.D. New York.

Oct. 1, 1991.

Kelner & Kelner by Paul Sod, Great Neck, N.Y., for plaintiffs.

E. Thomas Boyle, Suffolk County Atty. by Jeltje DeJong, Hauppauge, N.Y., for Suffolk County.

Curtis, Zaklukiewicz, Vasile, Devine & McElhenny by John P. Humphries, Merrick, N.Y. for Town of Brookhaven.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, plaintiffs Lee Paulison, Jr., ("plaintiff" or "Paulison"), and his parents, Lee Paulison, Sr. and Linda A. Paulison sue defendants Suffolk County ("the County") and the Town of Brookhaven ("the Town") to recover damages for permanent spinal injuries sustained by Lee Paulison, Jr. when, on July 16, 1988, he dove from a tree diving platform into shallow water of Lower Yaphank Lake (the "lake") in Yaphank, New York. Paulison alleges that the County and the Town were negligent based on, *inter alia,* the failure to use reasonable care to maintain the premises in a safe condition. Currently before the Court are motions by all parties for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. After a brief statement of the background facts, the Court will turn to address the motions.

## BACKGROUND

As noted above, the site of the accident at issue is Lower Yaphank Lake, located adjacent to Yaphank Avenue, in Yaphank, Town of Brookhaven, County of Suffolk, New York. County Road 21 ("C.R. 21") runs approximately six or seven feet roughly parallel to the waters' edge of the lake. According to the papers, plaintiff Lee Paulison was nineteen years old at the time the accident occurred on July 16, 1988. Plaintiff had been to the lake prior to the date of the accident, on the Fourth of July weekend, for between half an hour to an hour. On that prior visit, he climbed over a low guardrail at the edge of the roadway to get to the lake. Apparently, the distance between the guardrail and the shoreline is

three to four feet. There were no buoys or flags on the lake, no lifeguards, no fences, nor signs prohibiting swimming, diving or trespassing along the lake. According to plaintiff, the only signs at the lake prohibited littering.

Plaintiff claims to have observed, on that prior visit, the tree from which he would eventually dive on his next visit. The tree was stripped and had horizontal wooden slats or "steps" nailed to the trunk, which lead to a two-by-six wooden board on top of the tree. There was also a rope hanging from the tree, about fifteen feet off the ground, from which people could apparently swing and jump into the water. The depth of the water near the tree was estimated to be four to five feet. Approximately twenty to thirty feet to the left of the tree was a wooden platform on a watergate ("watergate" or "sewage gate"). The depth of the water by the watergate was between seven and eight feet, a drop of approximately five feet from the tree area. There were no signs indicating the drop in depth between the tree and watergate. Plaintiff denies knowledge of the shallow depth of the water by the tree, since on his earlier visit he swam near the watergate area.

On his first visit, plaintiff observed three people dive from the tree headfirst, although plaintiff himself did not dive from the tree. In addition, plaintiff claims he did not see anyone standing in the water near the tree since the divers exited the water by the watergate. According to the papers, plaintiff dove head first from the watergate several times on the earlier visit, and exited the lake by the watergate.

On July 16, 1988, plaintiff was at the lake for one and one-half hours before his injury occurred. All events that occurred were witnessed by plaintiff's companions and recorded during depositions, since plaintiff has no memory of the accident. It is alleged that when he arrived at the lake, several people were swimming, and some of those were diving from the tree platform.

After plaintiff dove from the watergate and swam for twenty minutes, he stood in a line of approximately ten to fifteen people that had formed to jump from the tree. Plaintiff dove straight up and straight down from the tree platform, entering headfirst into the water, and struck his head on the bottom of the lake. Plaintiff's companion, Joseph Boyle, found plaintiff lying on the bottom of the lake and pulled him out of the water. The County has stipulated to the fact that it owns and operates Lower Yaphank Lake three hundred feet west of C.R. 21, which area encompasses the site of the accident.

Plaintiffs commenced this action to recover damages for personal injuries sustained by Lee Paulison, Jr., which have rendered him permanently disabled and a quadriplegic. Plaintiffs allege negligence on the part of the Town and the County by reason of their failure to exercise reasonable care in their management, ownership, operation and control of the property. As noted above, each party currently moves for summary judgment.

The County alleges that the proximate cause of plaintiff's injuries was his reckless action in diving from the tree into the shallow water of the lake. The County claims that there was no duty to warn since the hazard was apparent, particularly in light of plaintiff's familiarity with the site. In addition, the County argues that the maintenance, operation and control of the lake rests, in part, with the Town of Brookhaven Department of Planning, Environment and Development. More specifically, the County alleges that the Town owed a duty of care with respect to the destruction of vegetation in Lower Yaphank Lake, and that the destruction or alteration of the "diving" tree falls within the wetlands ordinance which the Town allegedly failed to enforce.

The Town seeks to dismiss both plaintiffs' complaint and the County's cross-claim on the ground that it cannot be liable for the accident which took place on land owned by the County. More particularly, the Town argues that since it is undisputed that the County owns the land and portion of Lower Yaphank Lake in question, the

Town owed no tort duty to the other parties.

As to the County's allegation that the Town failed to enforce a flood prevention ordinance, the Town claims that there is no proof that the Town's flood prevention plan has anything to do with the depth of Lower Yaphank Lake. In addition, the Town claims that the County has made no showing to establish the Town's alleged failure to enforce its wetlands preservation ordinance.

Plaintiff argues that the proximate cause of his injuries was, *inter alia*, the County's negligence as a landowner and its violations of the New York State Sanitary Code, promulgated under authority of New York Public Health Law § 225. *See* Plaintiff's Notice of Cross–Motion at exhibit B. Plaintiff contends that the lake falls under that statute's definition of a bathing beach, and claims that the County permitted this site to be used for years as a bathing beach due to the continued open and notorious use of the area for swimming, jumping and diving. Plaintiff concludes, therefore, that defendant's violation of the Public Health Law was negligence per se, and was the proximate cause of plaintiff's injuries.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court noted that "[t]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See* 477 U.S. at 322, 106 S.Ct. at 2552. The Court further reasoned that in such a situation, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-

moving party's case necessarily renders all other facts immaterial." *Id.* at 323–24, 106 S.Ct. at 2552–53. Where genuine factual issues exist, they "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). With these principles in mind, the Court turns to address the motions at bar.

In order to prove negligence, the plaintiff must demonstrate (1) the existence of a legal duty owed by defendants to plaintiff; (2) a breach of that duty; and (3) injury to plaintiff proximately resulting from such breach. *Akins v. Glens Falls City School District*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531, 535 (Ct.App.1981) (citing Prosser, Torts [4th Ed.] § 30 p. 143). With regard to premises liability, the New York Court of Appeals, in the case of *Basso v. Miller*, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (Ct.App. 1976), abandoned the multiple standards of care owed by owners or occupiers of land based upon the status of those found on the property (i.e., invitee, licensee, or trespasser), and adopted a single standard of liability requiring an owner to maintain reasonably safe conditions in view of all the circumstances, " 'including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.' " *Id.* at 568, 352 N.E.2d at 872 (citation omitted). *See also Fellis v. Old Oaks Country Club, Inc.*, 163 A.D.2d 509, 558 N.Y.S.2d 183, 184 (2d Dep't 1990) (citations); *Larini v. Biomass Industries, Inc.*, 918 F.2d 1046, 1052 (2d Cir.1990); *Huang v. Lee*, 734 F.Supp. 71, 72 (E.D.N.Y.1990).

A primary independent factor in determining foreseeability, and thus to a great extent liability, is the likelihood of a plaintiff's presence on the land. The duty of the owner will vary with the likelihood of plaintiff's presence at the particular time and place of the injury. *Basso*, 386 N.Y.S.2d at 568, 352 N.E.2d at 872. Consideration of who plaintiff is and what his purpose is upon the land are factors which may be considered in deciding what would

be reasonable care under the circumstances. *Id.*

Assuming that defendants owed plaintiff a duty to warn, plaintiff must prove that defendants' conduct was the legal cause of his injury. As the New York Court of Appeals noted in *Kriz v. Schum,* 75 N.Y.2d 25, 550 N.Y.S.2d 584, 588, 549 N.E.2d 1155, 1159 (Ct.App.1989), "[i]t is well settled that because the determination of legal causation turns upon questions of foreseeability and 'what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve.' " *Id.* (citations omitted). Therefore, summary judgment is appropriate in those instances " 'where only one conclusion may be drawn from the established facts.' " *Id.* However, notwithstanding that a defendant's negligence might have been a causal factor in an accident, summary judgment may be appropriate "where the reckless conduct of the plaintiff constituted an unforeseeable superseding event, sufficient to break the causal chain and thus absolve the defendant of liability." *Id.* at 589, 549 N.E.2d at 1160 (citations omitted).

In order to act as a superseding cause, "a plaintiff's negligence must be more than mere contributory negligence, which would be relevant in apportioning culpable conduct. Rather, such conduct, in addition to being unforeseeable, must rise to a level of culpability as to replace the defendant's negligence as the legal cause of the accident." *Mesick v. State of New York,* 118 A.D.2d 214, 504 N.Y.S.2d 279 (3d Dep't 1986) (citation omitted). Once a prima facie case of negligence has been established, it is for the finder of fact to determine legal cause. *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (Ct.App.1980). In light of the principles discussed above, the Court turns to consider the parties' arguments in the case at bar.

### The County

In order for the County to have this action dismissed in its favor, it must prove that it had no duty to plaintiff, or that the proximate cause of plaintiff's injury was his own recklessness. Since the County is the landowner, it had a duty to maintain its premises in a reasonably safe condition. *Basso,* 386 N.Y.S.2d at 568, 352 N.E.2d at 872. As for proximate cause, the question of whether plaintiff's diving off the tree can be considered reckless is a triable issue of fact. Drawing all reasonable inferences in plaintiff's favor, *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987), it is important to note that plaintiff alleges that he had no knowledge of the depth of the water at the diving spot. In swimming and diving injury cases, courts have held that a plaintiff's lack of awareness of the water's depth is enough to deny a defendant's summary judgment motion on the issues of recklessness and causation. *Kriz,* 550 N.Y.S.2d at 589, 549 N.E.2d at 1160; *Coe v. Ta–Ga–Soke Campgrounds,* 162 A.D.2d 980, 557 N.Y.S.2d 207, 208 (4th Dep't 1990). In this case, whether the shallow waters were readily observable, or whether plaintiff should have known the water near the tree was shallow, are open questions of fact.

In *Mesick,* 504 N.Y.S.2d at 280, plaintiff was rendered a permanent quadriplegic when, while at a creek located on state property, he ran to grab a rope attached to a tree which extended out toward the water, but slipped and fell head first onto rocks. Despite posted restrictions which limited the use of the area to fishing, the site was frequently used for swimming, and swimmers often used the rope to swing out into the water. *Id.* at 280–81. The court found that it was not unforeseeable that plaintiff would try to gain a "running start at the rope, nor that he could have slipped while running at the rope." *Id.* at 282. Similarly, in this case, it was not unforeseeable that plaintiff would have dived from a tree on which wooden planks and a platform were attached, and where plaintiff had witnessed others swimming and diving without incident. Therefore, a

question of fact remains as to the foreseeability of plaintiff's actions, thus precluding summary judgment in the County's favor.

*Plaintiff*

 In order for plaintiff to be entitled to summary judgment, he must show that the County owed a duty, that it breached that duty; and that the breach was the proximate cause of his injury; or, in the alternative, that the County's failure to enforce the statute was negligence per se. Based on the discussion above, it is clear that open issues of fact exist which bar summary judgment as between the County and plaintiff.

As noted above, the County, as landowner, has a duty to maintain its premises in a reasonably safe condition. The County's arguments that it does not owe a duty to plaintiff because the lake was not a public recreation area, and that it never consented to have trespassers use the land, is without merit since, according to *Basso*, the County must maintain its premises in a safe condition to invitees and trespassers alike. *See* 386 N.Y.S.2d at 568, 352 N.E.2d at 872. It remains for the jury to determine whether the County acted reasonably in the maintenance of the premises. *See Toure v. New York City Bd. of Ed.*, 127 A.D.2d 759, 512 N.Y.S.2d 150, 151 (mem.) (2d Dep't 1987).

According to *Herman v. State of New York*, 63 N.Y.2d 822, 482 N.Y.S.2d 248, 472 N.E.2d 24 (Ct.App.1984), to be liable in damages for failure to warn of a dangerous condition, a property owner must have notice of the condition as well as the unreasonable risk it creates. *Id.* at 249, 472 N.E.2d at 25. There is, however, no duty to warn against a condition that can be readily observed. *Olsen v. State of New York*, 30 A.D.2d 759, 291 N.Y.S.2d 833 (4th Dep't 1968), *aff'd*, 25 N.Y.2d 665, 306 N.Y.S.2d 474, 254 N.E.2d 774 (Ct.App. 1969); *Casela v. City of Troy*, 161 A.D.2d 991, 557 N.Y.S.2d 562 (3d Dep't 1990); *Cimino v. Town of Hempstead*, 110 A.D.2d 805, 488 N.Y.S.2d 68, 69 (2d Dep't), *aff'd*, 66 N.Y.2d 709, 496 N.Y.S.2d 425, 487 N.E.2d 282 (Ct.App.1985). Plaintiff claims

that diving and swimming occurred at the site during warm weather for years without any interference from County authorities. Plaintiff further alleges that County authorities drove past the lake on a daily basis, and should have known that people were swimming there. Thus, whether or not the County had notice of the tree's alteration, or that Lower Yaphank Lake had been used in the past as a place for swimming and diving, is a question of fact.

Whether or not Lower Yaphank Lake may be considered a bathing beach under New York Law may also be determined by the jury. Section 6–2.2(a) of the New York Sanitary Code, promulgated under authority of Public Health Law § 225, defines a bathing beach as a bathing place where, *inter alia*, a lake is used "for bathing or swimming with the express or implied permission or consent of the owner...." *See* Plaintiff's Notice of Cross–Motion at exhibit B. Hence, in the case at bar it is for the jury to determine whether implied consent was given. If it is decided that Lower Yaphank Lake is a bathing beach, then the jury must go on to determine whether the County violated the statute and whether these violations were the proximate cause of plaintiff's injuries. Accordingly, plaintiff's motion for summary judgment must be likewise denied.

*The Town*

 As noted above, the Town does not own the area of Lower Yaphank Lake where the accident occurred, and this Court finds that it does not owe any duty for purposes of tort liability in the instant case. The County's allegations that the Town failed to enforce its flood prevention and wetlands protection ordinances are immaterial. Neither ordinance has anything to do with the Town's responsibility for accidents that occur on County-owned property. In order to impose liability upon a municipality for failure to enforce a statute or regulation, there must be a "special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals." *O'Connor v. City of New York*, 58 N.Y.2d 184, 460 N.Y.S.2d 485, 487, 447 N.E.2d 33, 35 (Ct.App.1983) (citations omitted). It is insufficient to attempt to form a basis for municipal liability

where regulations were intended to protect "all members of the general public similarly situated," rather than specific individuals. *Id.* The wetlands protection ordinance is designed to protect the environment and the public at large, not create specific tort liability towards individuals. Similarly, the flood ordinance is designed to protect the public's nearby residences, and not to protect people from injuries occurring on property that is not owned by the Town. In short, these ordinances do not create a specific duty owed by the Town to plaintiff. Therefore, neither plaintiff nor the County has created a triable issue of fact as to the Town's obligations. Since there are no issues of material fact as to the Town's negligence, the Town's motion for summary judgment must be granted. Fed.R.Civ.P. 56(c).

### CONCLUSION

For the reasons stated above, the motions for summary judgment by Suffolk County and plaintiff, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, are denied. The defendant Town of Brookhaven's motion for summary judgment is granted; the Clerk of the Court is directed to enter judgment for the Town. Jury selection will proceed October 4, 1991 at 8:30 a.m.; trial will commence October 7, 1991.

SO ORDERED.