OPINION OF THE COURT
Alexander, J.
 In each of these cases the plaintiff[1] was seriously injured as a result of diving from or sliding down a pool slide into the shallow end of a swimming pool. The common issue presented by their appeals is whether the records on these motions for summary judgment conclusively establish that the reckless conduct of the plaintiffs was the sole legal cause of their injuries (see, Howard v Poseidon Pools, 72 NY2d 972, 974; Boltax v Joy Day Camp, 67 NY2d 617). We conclude in Kriz v Schum that Julia Kriz’s conduct in sliding down a pool slide into the shallow end of a pool was not, as a matter of law, an unforeseeable use of the slide such as to constitute the sole legal cause of her injuries. Similarly, in Denkensohn v Davenport, neither Sheri Denkensohn’s conduct in diving from the top of a pool slide into water of an unknown depth nor the conduct of her companion in advising her that it was safe to do so and in failing to adequately illuminate the pool area, was, as a matter of law, an unforeseeable superseding cause of her injuries. Accordingly, the records on these summary judgment motions demonstrate that issues of fact requiring a trial exist in each case.
I

Kriz v Schum

On July 25, 1985, plaintiff Julia Kriz was seriously injured after sliding headfirst down a pool slide into a shallow, above-ground pool owned by defendants David and Linda Schum. David and Linda Schum were away on the day of the accident but their daughter Karen, who is also joined as a defendant, had invited plaintiff, Paul Bauer and Eddie Clouston to use the pool, which plaintiff had never visited before. A few minutes after entering the pool, plaintiff used the pool slide, *30 first sliding down in a seated position and next in a headfirst "belly slide”. Neither slide was eventful. The water in the pool was four to five feet deep; plaintiff was approximately five feet three inches tall at the time of the accident and the water level reached just above her shoulders. On her next slide, plaintiff executed another headfirst belly slide but this time, negotiated her body through an inner tube held flat on the water by Bauer. She hit her head on the bottom of the pool and tragically was rendered a quadriplegic.
Plaintiff commenced this negligence action against the Schums, Clover Pool Supply Company (Clover), the retailer from whom the Schums had purchased the slide and Aqua Slide "N” Dive (Aqua Slide), the manufacturer of the slide. Aqua Slide has since sought protection under chapter 11 of the United States Bankruptcy Code and is not a party to this appeal.[2] Following the completion of discovery, defendants Schum and Clover moved and plaintiff cross-moved for summary judgment.
The submissions demonstrate that the Schums purchased the pool slide from defendant Clover in 1975. They claim that Clover also installed the slide, an assertion that Clover disputes. The president of Aqua Slide testified at his deposition that it was not uncommon for people to slide headfirst down pool slides such as the one owned by the Schums and that the slides had been designed with that fact in mind. Indeed advertisements for the slides depicted people performing such headfirst belly slides. Moreover, the affidavit of plaintiff’s expert indicated that it was commonly known in the pool slide industry that people often used inner tubes as targets while sliding off the slides. The expert further opined, however, that while the slide design conveyed a deceptive appearance of safety to its users, actually such belly slides may cause the torso to tilt downward upon entry into the water, converting the slide into a dangerous dive.
In 1976, about a year after the Schums purchased their pool slide, the Consumer Product Safety Commission (CPSC) promulgated standards applicable to all pool slides sold in the United States. The standards required, in part, that instructions on the use of these slides, including warnings about the danger of sliding headfirst, be affixed to the slide upon installation. It is undisputed that although Aqua Slide subsequently distributed warnings to Clover about the dangers of the pool *31 slide, Clover never conveyed the warnings to the Schums and no warning labels were ever affixed to the slide. David and Linda Schum testified that they did not know of the dangers of headfirst belly slides, although they admitted warning their children to be careful in performing such slides.
Supreme Court granted the Schums’ motion and dismissed the complaint as against them but denied summary judgment to Clover against plaintiff and on its cross claim for contribution from the Schums. Supreme Court also denied plaintiff’s cross motion for summary judgment against both defendants.
Because- it concluded that the facts concerning plaintiff’s conduct were "materially indistinguishable” from the facts in Howard v Poseidon Pools (72 NY2d 972, supra), the Appellate Division modified by granting summary judgment to Clover and dismissing the complaint against it. Two Justices dissented, concluding that unlike the plaintiff in Howard, plaintiff here was engaged in a reasonably foreseeable use of the slide, did not indicate that she knew that the use was dangerous and that no safety warnings of the danger were posted. Thus they found that issues of fact existed such as would warrant denial of the drastic remedy of summary dismissal of the complaint and would require a trial for their resolution. On plaintiff’s appeal pursuant to CPLR 5601 (a), we now modify the order of the Appellate Division, deny summary judgment to Clover and the Schums and reinstate the complaint.

Denkensohn v Davenport

This action also arose from a diving accident. Plaintiff was injured in August 1983 while using a residential in-ground swimming pool owned by defendants Richard and Betty Davenport. The record before Supreme Court established that on the night of the accident, plaintiff Sheri Denkensohn, then 16 years old, had attended a party with her girlfriend, Stacy Gorman. She later left the party with Gorman, David Davenport and Brian Cessarato. After stopping at a local bar/restaurant, the four proceeded to Davenport’s home to swim. Plaintiff had never been to the Davenport home before.
After they arrived at the Davenport home and changed into their swimsuits, David announced that a "ritual” existed whereby each person had to enter the pool for the first time by diving from the top of the pool slide. As the group walked out the house to the pool area, plaintiff remembered that she was wearing her contact lenses and went to the car to remove *32 them. Meanwhile, David and Stacy dove into the deep end of the pool from the top of the pool slide. The slide curved toward the deeper end of the pool, but was located at the side of the pool, near the area where a white line on the pool bottom indicated the division between the deep and the shallow areas. A diving board was located perpendicular to the side of the pool where the slide was installed. The pool area was illuminated only by a light on the back porch because David had failed to turn on a 300-watt underwater light in the pool.
When the plaintiff returned to the pool area after removing her contact lenses, she could hear her friends splashing around in the pool, but was unable to see them because of the darkness. She was able, while climbing to the top of the slide, to see the steps of the slide ladder. While on the slide platform, she could not discern the depth of the water, although she could see the water’s surface. Before diving, plaintiff asked David whether it was all right to dive and he responded that it was. Relying on the fact that other pool slides with which she was familiar had been located at the deep end of pools, and on David’s assurances that it was all right to dive, plaintiff presumed that the water in front, of her was deep enough for diving. Tragically, it was not — she dove into the shallow end of the pool adjacent to the slide, struck her head on the pool bottom and was rendered a quadriplegic.
Additionally, as in Kriz, the submissions on summary judgment demonstrated that the pool slide industry was aware of the dangers of the slides. In 1976, three years after the Davenports purchased their pool slide, the CPSC promulgated regulations requiring, among other things, that certain warnings be affixed to the slides. In response to these regulations, the manufacturer of the Davenports’ pool slide began putting warning decals on its slides and in fact furnished the decals to its distributors, including Archie Lawrence. One of the warning decals provided "No Standing Up On Top Platform of This Slide. Careless Misuse Can Cause Serious Injury”. No such decals, however, were ever placed on the Davenports’ pool slide.
This action was commenced against the manufacturers and distributors of the in-ground pool (collectively Pacific Pools), against defendant Archie Lawrence & Son, the contractor who installed both the pool and the slide, against defendant Aqua *33 Slide "N” Dive Corporation, the manufacturer of the slide, and against Richard and Betty Davenport and their son David. Seaboard Industries, the company that bought the slide from Aqua Slide and sold it to Archie Lawrence, was impleaded as a third-party defendant by the Davenports. Plaintiff subsequently settled with the Davenports and after the manufacturer filed for bankruptcy, her action against Aqua Slide was pursued in Federal court.
Pacific Pools, Archie Lawrence, and Seaboard sought summary judgment dismissing the complaint, contending that plaintiff had failed to establish, prima facie, that the alleged acts and omissions charged to them were the proximate cause of her injuries. Supreme Court granted the motions but a divided Appellate Division modified by denying summary judgment to Seaboard and Archie Lawrence. The majority concluded that this case was distinguishable from our decisions in Howard (supra), Smith v Stark (67 NY2d 693) and Boltax v Joy Day Camp (67 NY2d 617, supra) because here, plaintiff did not know the depth of the water into which she dove. The two dissenting Justices concluded that plaintiff’s conduct coupled with that of David Davenport was a superseding cause of her injuries. Seaboard and Archie Lawrence appeal by leave of the Appellate Division, which, stating that no issue of fact was considered by that court, certified to us that a question of law, decisive on the correctness of its determination has arisen which ought to be reviewed by the Court of Appeals.[3] We now answer the question in the negative and affirm the order of the Appellate Division denying summary judgment to the appellants.
II
We note at the outset that both of these cases were resolved below on motions for summary judgment and as the plaintiffs aptly observe, on such a motion, the court’s role is limited to issue finding, not issue resolution. The plaintiffs in each case contend that various questions of fact are presented which *34 preclude a grant of summary judgment to the defendants.[4] Assuming, as plaintiffs contend, that these defendants owed their respective plaintiffs a duty to warn of the dangers of pool slides, each plaintiff must nevertheless establish, as part of a prima facie case, that the conduct of the defendants was the legal cause of her injuries. It is well settled that because the determination of legal causation turns upon questions of foreseeability and "what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve” (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; see also, Levy v Cascades Operating Corp, 289 NY 714 [issues of negligence and assumption of risk arising out of injuries suffered as a result of headfirst belly slide were questions of fact for the jury]). Thus summary judgment is appropriate in those instances "where only one conclusion may be drawn from the established facts” (51 NY2d, at 315).
Applying these principles to negligence actions arising out of diving accidents occurring in swimming pools, we have held that summary judgment is appropriate where "the record eliminates any legal cause other than the reckless conduct of the plaintiff” (Howard v Poseidon Pools, 72 NY2d, at 974, supra; see also, Manning v Manning, 72 NY2d 972; Smith v Stark, supra). In Howard, we held that the reckless conduct of the six-foot, three-inch plaintiff in diving through an inner tube into an above-ground pool he knew to be shallow constituted the sole legal cause of his injuries. Similarly, in Manning, the plaintiff was injured when he dove headfirst into his parents’ above-ground pool, which he had used many times and knew to be shallow (see also, Smith v Stark, 67 NY2d 693, supra [lack of depth warning devices was not the proximate cause of plaintiff’s injuries since he must have known that the area into which he dove contained shallow water]).
In each of these cases it was determined that the plaintiff’s conduct in undertaking the open and obvious risk of diving headfirst into shallow water was not an intended use of the pools and was not foreseeable to the defendant manufacturers, retailers and landowners. Thus, while a plaintiff need not demonstrate "that the precise manner in which the accident happened, or the extent of injuries, was foreseeable” to establish that the defendant’s negligence was a substantial cause of *35 his or her injuries (Derdiarian v Felix Contr. Corp., 51 NY2d, at 315, supra [emphasis added]; Restatement [Second] of Torts § 435), the undisputed facts in Howard, Manning and Smith failed to demonstrate even the possibility that any event other than the plaintiffs own reckless conduct caused the injuries.
Additionally, we have determined summary judgment to be appropriate notwithstanding that a defendant’s negligence might have been a causative factor in the accident where the reckless conduct of the plaintiff constituted an unforeseeable superseding event, sufficient to break the causal chain and thus absolve the defendant of liability (Boltax v Joy Day Camp, 67 NY2d, at 620, supra; see, Derdiarian v Felix Contr. Corp., 51 NY2d, at 315, supra; Prosser and Keeton, Torts § 44 [5th ed]). Thus, in Boltax, we held that despite the defendant’s negligence in failing to properly fill a pool and in placing a lifeguard chair near the pool’s shallow end, the reckless conduct of the plaintiff who admitted knowledge of the various water levels of a pool and nevertheless chose to dive headfirst from the top of the lifeguard chair into shallow water was an unforeseeable superseding event sufficient to absolve the defendant landowner of liability.
Turning to the present appeals, we reject the defendants’ contention in Kriz v Schum that, as a matter of law, their alleged negligence could not have caused plaintiffs injuries. There is evidence in the submissions on the summary judgment motions that the headfirst belly slide performed by plaintiff was an intended use of the pool slide and therefore foreseeable to the defendants. Aqua Slide’s president admitted that such headfirst belly slides were not uncommon and that the slides had been designed with that fact in mind. There was also the sworn statement of plaintiffs expert that it was known in the pool slide industry that people often used inner tubes as targets to dive through when sliding off the slides. Moreover, the standards promulgated by the CPSC, which require that labels be affixed to the slides warning of the dangers of sliding headfirst down the slides, also suggest that the prevalence and tendency to engage in such headfirst slides was known throughout the pool slide industry. Notably, both these CPSC standards and the testimony of plaintiffs expert suggest on the other hand that the dangers of sliding headfirst were not commonly known to users of the slides. This record, therefore, does not present a circumstance where " 'only one [legal] conclusion may be drawn from the established facts’ ” (Howard v Poseidon Pools, 72 NY2d, at 974, supra). Rather, an *36 issue of fact is raised as to whether the allegedly negligent conduct of the defendants in failing to affix warnings to the slide or to otherwise warn the plaintiff of the dangers of sliding headfirst was the legal cause of her injuries. Accordingly, summary judgment was improperly granted.
Similarly in Denkensohn v Davenport a jury could find that plaintiff’s conduct in diving off the top of a pool slide into shallow water, on the assurances of her companion that it was safe to do so, was not the sole legal cause of her injuries. Unlike Howard, Manning and Smith, the record does not demonstrate that plaintiff knew the depth of the water into which she dove. Plaintiff’s deposition testimony is to the contrary. The pool area was poorly lit, she had never been in the pool before and although she could see the steps of the slide as she climbed to the platform, while standing on the platform she could not discern the depth of the water and could not see her friends in the pool. There was also opinion evidence in the record that diving off the top of slide was a predictable use of the equipment and plaintiff alleged that the defective design of the slide facilitated such dives. Consequently, notwithstanding the fact that plaintiff’s dive may not be an intended use of the pool slide, it was not unforeseeable as a matter of law and there is a triable issue of fact as to whether the lack of appropriately placed warnings, the design of the slide or its placement near the shallow end of the pool were causative factors in her injury.
Furthermore, we find no merit in defendants’ contention that even if their alleged acts of negligence were causative factors in her injury, they are relieved of liability because plaintiff’s conduct is a superseding cause of the injury. In these circumstances, a superseding act does not break the causal nexus unless it is "an intervening act * * * extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant’s conduct” (Derdiarian v Felix Contr. Corp., 51 NY2d, at 315, supra). While summary judgment is generally appropriate only in those cases where the intervening acts "operate upon but do not flow from the original negligence” (id.; see also, Lynch v Bay Ridge Obstetrical & Gynecological Assocs., 72 NY2d 632, 636-637), we have recognized that even where the injury flows from defendant’s negligence the reckless conduct of a plaintiff may be, as a matter of law, extraordinary and unforeseeable so as to break the causal chain (see, Boltax v Joy Day Camp, supra). Here, unlike Boltax, however, *37 a jury could find that plaintiffs dive was not reckless because she did not know the depth of the water into which she dove. Thus the record does not demonstrate that plaintiffs conduct was a superseding cause as a matter of law, and her conduct cannot be transformed into such a superseding cause simply because David Davenport may have been reckless.
Finally, we agree with the Appellate Division that David Davenport’s negligence in failing to adequately light the pool area and in advising plaintiff that it was safe to dive cannot, on this record, be considered an independent superseding cause as a matter of law (144 AD2d 58, 62). We conclude, therefore, that summary judgment was properly denied to defendants Archie Lawrence and Seaboard because there are issues of fact requiring a trial.
We have considered those remaining arguments raised by the parties which are subject to our review and find them to be without merit.
Accordingly, the order of the Appellate Division insofar as appealed from in Kriz v Schum should be reversed, with costs, and summary judgment denied to defendant Clover Pool Supply Company and defendants Schum. The order of the Appellate Division insofar as appealed from in Denkensohn v Davenport should be affirmed and the certified question answered in the negative.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
In Kriz v Schum: Order insofar as appealed from reversed, etc.
In Denkensohn v Davenport: On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order insofar as appealed from affirmed, etc.

. Julia Kriz, an adult, brings the action in her own name, while the claim of Sheri Denkensohn, an infant, is prosecuted by her father Charles Denkensohn, who also asserts a derivative action. As used in this opinion, plaintiff refers only to Julia Kriz or Sheri Denkensohn, as the case may be.

. Plaintiff pursued her action against Aqua Slide in Federal court.

. The Appellate Division certified the following question: "Did this Court err, as a matter of law, by reversing so much of the Supreme Court Order as dismissed the complaint, cross claims and counterclaims asserted against defendant Archie Lawrence & Son and third-party defendant, Seaboard Industries; denying the motions as to those claims; and, as so modified, affirming the order?”

. Although Kriz moved for summary judgment at Supreme Court, she has not cross-appealed from a denial of that motion.