[617 NYS2d 462]

Ernesto Garcia, Individually and as Administrator of the Estate of Ana Garcia, Deceased, Respondent, v City of New York, Appellant.

First Department, October 20, 1994

## APPEARANCES OF COUNSEL

*John Hogrogian* of counsel *(Pamela Seider Dolgow* with him on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellant.

*Norman E. Frowley* of counsel *(Brian J. Isaac* with him on the brief; *Weitz & Luxemberg,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

The salient facts of this wrongful death action are not in dispute. Testimony at trial revealed that during a hot summer night on July 21, 1985, decedent Ana Garcia, a 32-year-old woman, illegally entered a public swimming pool facility in Van Cortlandt Park in the late evening and well after the pool had officially closed for the day. There were approximately 50 to 100 illegal swimmers already in the pool area, a number of whom had coolers and were drinking alcoholic beverages. The lights were off and no lifeguards or life-saving equipment were in the pool vicinity. At approximately 1:00 A.M. the police and an ambulance were summoned and paramedics attempted to revive Ms. Garcia, who was removed from the pool in an unconscious state. The attempt by the paramedics proved futile and Ms. Garcia was later pronounced dead at North Central Bronx Hospital.

Decedent was accompanied to the pool by six other individuals. Various members of the group testified at trial that they had gained access to the pool either through a hole in the surrounding chain link fence or by climbing over a brick wall; that they were aware the pool was closed; and that they were trespassing.

There is no dispute that the members of Ms. Garcia's party had been consuming alcohol before their arrival at the pool and had continued to do so throughout the night. One of the

members of the decedent's group, a Ms. Ana Pagan Torres, testified that Ms. Garcia had been drinking gin that evening. At some unknown point thereafter, Ms. Garcia entered the pool, which was only three feet deep, became submerged and drowned.

The estate of Ana Garcia commenced the within action on or about September 25, 1986, grounded on theories of negligence and nuisance. The matter was tried before a jury which found that the City was not negligent in maintaining the fence surrounding the pool (indeed, the evidence presented indicated that the fence was usually breached a short time after the Parks Department made repairs, which it did on numerous occasions) but that the City was negligent in failing to provide proper supervision at the pool. The jury found plaintiff's decedent and the City each to be 50% negligent and awarded plaintiff approximately $2,000,000 in damages.

The City thereafter moved to set aside the verdict as unsupported by the evidence and as excessive. The trial court, by decision and order entered April 20, 1992 (Lewis Friedman, J.), held that the special duty doctrine was inapplicable and that plaintiff's decedent had not assumed the risk so as to preclude the City's liability. The IAS Court, however, granted the City's motion to the extent of ordering a new trial on the issue of damages unless plaintiff agreed to a reduction in the amount of damages, after comparative negligence, to $432,500. Plaintiff subsequently consented to the reduction and on June 3, 1992 judgment was entered, after the addition of interest and costs, in the amount of $615,343.04. The City now appeals.

It is axiomatic that in order to establish a prima facie case of negligence, a plaintiff must show that the defendant was negligent and that such negligence was a substantial factor in bringing about the events which caused plaintiff's injuries (*Boltax v Joy Day Camp*, 67 NY2d 617; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308). With regard to the instant case, a municipality has a duty to maintain its parks and playground facilities in a reasonably safe condition (*Nicholson v Board of Educ.*, 36 NY2d 798; *Caldwell v Village of Is. Park*, 304 NY 268). However, a municipality is not an insurer of the safety of those who use its facilities, and its only duty is to exercise ordinary care in the supervision, construction and maintenance of those facilities (*Curcio v City of New York*, 275 NY 20; *Pierce v Village of Ravena*, 264 App Div 457).

While the New York City Department of Parks and Recre-

ation was aware that trespassers frequently entered the pool facility after it officially closed at 7:00 P.M., it made all efforts to exclude the night swimmers by promptly repairing the surrounding fence each time it was cut; posting the operating hours of the pool; and locking the gates, securing the area and turning the lights off after closing. A night watchman was also on duty to patrol the area and monitor the activities taking place. The watchman, who was stationed in a guardhouse near the pool, was given specific instructions not to attempt to evict the trespassers since intruders have assaulted the watchman in the past. There have been other incidents regarding municipal pools in general in which the guardhouse had been pelted with rocks and bottles as the result of various confrontations. The night watchman was directed to keep a log of the number of swimmers and to report that number to the local precinct, and to call the police when the crowd got rowdy or boisterous or when assistance was required.

The policy of the Police Department was that they would only expel the trespassers if they became boisterous or otherwise disturbed the peace in order to avoid confrontations, community unrest and a possible riot. This procedure seems to have been implemented due to prior incidents of unrest in the City, especially during hot summer nights when large crowds often frequent the parks and pool areas to escape the heat and humidity.

The City, as a proprietor, took all reasonably necessary steps to secure the area and exclude illegal swimmers from its facilities after closing. Plaintiff's argument that the municipality breached its duty by failing to provide life-saving equipment, a lifeguard, and by neglecting to turn the lights on after closing is misplaced. The municipality was under no duty to continue operation of its pool facilities beyond its operating hours. Plaintiff's contention would lead to the incongruous result of having the trespassers dictate the operating hours of a public pool or subject the City to liability for injuries sustained by intruders. Moreover, even if a lifeguard had been provided there is no evidence that his/her presence would have avoided the death of the decedent (see, Curcio v City of New York, supra, at 24).

Plaintiff's contention that the night watchman should have taken some action or called the police to expel the crowd is equally unpersuasive. The night watchman, who was alone and unarmed, was instructed not to confront the intruders for his own safety. The temporary presence of police would not

have kept the trespassers out. Decedent's companion, Ms. Torres, testified that the police had in the past chased people away, but as soon as the police departed, they would again reenter the pool. Any attempt by the City to exclude illegal swimmers from the pool after closing would have been ineffective, unfeasible or simply too costly. The City would have had to have deployed a regiment of police officers to guard the subject pool at all times after closing to effectively keep trespassers out. The City is not charged with such a duty.

Further, it has long been held that a municipality's provision of police protection to its citizenry is a resource-allocating function that is owed to the public at large and is best left to the discretion of the policy makers *(Cuffy v City of New York,* 69 NY2d 255, 260; *Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175)* absent the existence of a special relationship between plaintiff and defendant *(Cuffy v City of New York, supra,* at 260; *De Long v County of Erie,* 60 NY2d 296).

Plaintiff makes no attempt to demonstrate a special relationship and it was, therefore, within the Police Department's discretion, in the interests of avoiding community unrest, to refrain from ejecting trespassers from the pool unless they became unruly or disturbed the peace. As a result, plaintiff's argument is untenable.

Even assuming that the municipality was negligent to some degree in failing to keep illegal swimmers out of the pool area and in failing to provide supervision, which the evidence herein does not support, such negligence would not have been a substantial factor in bringing about Ms. Garcia's injuries and death *(see, Derdiarian v Felix Contr. Corp., supra,* at 315; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520; *Culkin v Parks & Recreation Dept.,* 168 AD2d 912, *lv denied* 77 NY2d 806; *Valdez v City of New York,* 148 AD2d 697; Restatement [Second] of Torts § 431). Although the trier of fact normally determines legal cause, "where only one conclusion may be drawn from the established facts * * * the question of legal cause may be decided as a matter of law" *(Derdiarian v Felix Contr. Corp., supra,* at 315; *Howard v Poseidon Pools,* 72 NY2d 972, 974; *Boltax v Joy Day Camp,* 67 NY2d 617, 619, *supra; Belling v Haugh's Pools,* 126 AD2d 958, 959, *lv denied* 70 NY2d 602, *rearg dismissed* 70 NY2d 748; Prosser and Keeton, Torts § 44, at 311-312 [5th ed]).

The foregoing principles have been applied by the courts of this State to a number of negligence cases stemming from

accidents in swimming pools and designated swimming areas in which the plaintiffs' conduct was found to constitute an unforeseeable superseding event which sufficiently broke the causal chain or was the sole proximate cause of their injuries (see, e.g., Olsen v Town of Richfield, 81 NY2d 1024; Howard v Poseidon Pools, supra; Boltax v Joy Day Camp, supra; Feldman v Drum, 178 AD2d 504, lv denied 80 NY2d 752; Valdez v City of New York, supra).

In the instant case, an autopsy revealed that decedent had died of asphyxia by drowning and that her blood alcohol level at the time of death was .23%, or more than twice the legal limit for driving while intoxicated in New York State. Testimony elicited by defendant City from Dr. Mark Taff, a medical expert, disclosed that an individual of Ms. Garcia's size could attain the foregoing blood alcohol level by drinking the equivalent of 11 to 12 12-ounce cans of beer within one hour. Dr. Taff continued that in layman's terms, Ms. Garcia "was drunk at the time of her death" and in all probability manifested a number of symptoms of intoxication, including slurred speech and muscular uncoordination. Dr. Taff also noted that, pursuant to the autopsy report, Ms. Garcia had suffered some superficial bruises and scars, which may have occurred when she was removed from the pool.

Under the evidence presented in this case, plaintiff's decedent must be found to have assumed the risk of her own conduct, which acts as a bar to plaintiff's recovery. As we stated in Morales v New York City Hous. Auth. (187 AD2d 295, 295-296): "While the doctrine of assumption of risk is no longer an absolute defense (see, CPLR 1411), it is necessary and proper, when measuring a defendant's duty to a plaintiff, to consider the risks assumed by the plaintiff (Turcotte v Fell, 68 NY2d 432, 438). 'As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent to reasonably foreseeable consequences of their participation.' (Supra, at 439.)"

The foregoing must be read in conjunction with the proposition that one who engages in water sports assumes those reasonably foreseeable risks which are inherent in that activity (Anello v Town of Babylon, 143 AD2d 714; Sartoris v State of New York, 133 AD2d 619, 620; Herman v State of New York, 94 AD2d 161, affd 63 NY2d 822).

In the case at bar, the evidence supports no other conclu-

sion than that the reckless and culpable conduct of decedent in knowingly entering the pool facility after it was closed for the day, well after dusk, where no illumination, lifeguards or life-saving equipment were present and, thereafter, choosing to enter the pool unaccompanied in a heavily intoxicated state, with the concomitant impairment of her sensory perception and muscular coordination, was the sole legal cause of her injuries and subsequent death. The fact that decedent drowned in a pool with a uniform depth of three feet further substantiates the foregoing conclusion.

Even if an agent of the municipality had expressly authorized the use of the pool after closing, a swimmer continues to assume the obvious and necessary risks unless a representation as to safety has been imparted (see, Heard v City of New York, 82 NY2d 66).

Although this was a tragic and unfortunate incident, Ms. Garcia, who was sui juris, must be charged with the responsibilities and consequences of her own imprudent conduct, which included the undertaking of a water sport activity in a dark pool while heavily intoxicated. Decedent's reckless conduct, coupled with the inherent risks to one engaging in water sports (Valdez v City of New York, supra, at 698-699; Herman v State of New York, supra, at 164), constitutes an unforeseeable superseding event which absolves defendant from any liability.

Accordingly, the judgment of Supreme Court, Bronx County (Lewis Friedman, J.), entered June 3, 1992, which, inter alia, after a jury trial, found in favor of plaintiff in the amount of $615,343.04, is unanimously reversed, on the law, without costs, and the complaint is dismissed. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint, without costs.

SULLIVAN, J. P., CARRO, WALLACH and KUPFERMAN, JJ., concur.

Judgment, Supreme Court, Bronx County, entered June 3, 1992, unanimously reversed, on the law, without costs, and the complaint dismissed.