OPINION OF THE COURT
Robert G. Hurlbutt, J.
Defendant County of Oswego moves for summary judgment *606 dismissing the complaint in this negligence action in which plaintiff seeks to recover damages for injury sustained when he fell or jumped from a radio tower owned by the County and situated near the East Side Fire Station in the City of Oswego.
The 160-foot open frame steel radio tower is used by the Oswego County Fire Control Coordinator, which has offices in the East Side Fire Station, to support radio and microwave antennae for transmission and reception. The tower consists of three vertical metal poles (legs) extending 160 feet high from a concrete platform. The structure is wider at the base and tapers at the top. The three metal poles are interconnected with cross bracing, which is four inches wide at the base of the tower and which decreases progressively in width as the tower tapers. One pole or leg has rungs to facilitate climbing, but the rungs are removed below the approximate height of 23 feet to prevent unauthorized access.
On the evening of June 13, 1992 plaintiff, a 31-year-old farm laborer with a 10th-grade education, spent time at the beach drinking beer with friends and at his mother’s home playing cards before going to the home he shared with his girlfriend at approximately 11:15 p.m. A domestic squabble ensued and plaintiff left in anger at approximately 11:30 p.m. Prior to leaving, plaintiff pushed his girlfriend to the floor and she declared her intent to call the police. After leaving the home, plaintiff went to the tavern across the street where, according to his examination before trial testimony, he drank three draft beers in 15 to 20 minutes. He then departed to walk to his sister’s home. The route, which he had traveled many times, took him through the parking lot at the East Side Fire Station and past the radio tower. When he reached the East Side Fire Station, he commenced to climb the tower. He testified that he climbed the tower "the hard way,” by scooting up through the four-inch cross bracing, walking up one diagonal brace until he could reach the angle above him and then pulling himself up to the next higher brace, stopping at intervals to rest. By this method, plaintiff reached the approximate height of 100 feet.
At his examination before trial, plaintiff testified that he climbed the tower because he was "mad and upset” over his fight with his girlfriend, because he believed the police were after him, and "because it was there.” He denies that he climbed the tower with intent to jump in a suicide attempt, as defendants theorize. Plaintiff suggests that, in his angry, intoxicated state, he perceived the climb as a challenge he desired to undertake.
*607 After reaching the approximate height of 100 feet, plaintiff descended approximately 15 feet and stopped to smoke a cigarette. At this time, he observed people on the ground who had become aware that he was on the tower. The Oswego City Fire Department and Police Department had arrived. Plaintiff testified that at this point he became tired, could not go any further, began to panic, and his feet slipped and he jumped toward the roof of the fire station. Plaintiff landed on the fire station roof and sustained serious injury, rendering him a quadriplegic.
The complaint alleges that plaintiff’s injury was caused by the negligence of the County in failing to erect a fence around the tower to prevent plaintiff from gaining access to it and in failing to post warnings informing plaintiff of the danger of falling from the tower. Defendant County of Oswego moves for summary judgment dismissing the complaint against it on the basis that the County owed no duty to plaintiff and, even if a duty was owed, plaintiff’s own reckless conduct was the sole legal cause of his injuries as a matter of law. Defendant also argues that it had no duty to warn of the obvious danger posed to trespassers on the tower — that of falling.
Plaintiff opposes the County’s motions, arguing that the County, as occupier of land owned by the City of Oswego on which its radio tower was situate, owed a duty to plaintiff to maintain its premises in a reasonably safe condition. The County breached its duty, it is argued, in failing to fence the tower so that unauthorized persons, such as plaintiff, could not gain access to the structure, and that breach of duty was a contributing factor to plaintiff’s injury.
In Basso v Miller (40 NY2d 233), the Court of Appeals abandoned the former rule requiring classification of the plaintiff as a trespasser, licensee or invitee in the analysis of duty owed by an owner or occupant of real property. The Basso rule is one of "adherence to the single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability.” (Supra, at 241.) " 'A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all of the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk’.” (Supra.)
It is well established that a landowner / occupier has "no duty to warn against a condition that can be readily observed by the reasonable use of the senses. The situation is then a warning in itself.” (Olsen v State of New York, 30 AD2d 759- *608 760, affd 25 NY2d 665; Rowell v Town of Hempstead, 186 AD2d 553, lv denied 81 NY2d 703.) The duty to warn arises where the landowner / occupier has knowledge of a dangerous condition on the premises "not otherwise likely to be discovered [by] persons foreseeably on the premises.” (85 NY Jur 2d, Premises Liability, § 51; Herman v State of New York, 63 NY2d 822; Ackermann v Town of Fishkill, 201 AD2d 441; Smith v Curtis Lbr. Co., 183 AD2d 1018; Tarricone v State of New York, 175 AD2d 308, lv denied 78 NY2d 862; Caris v Mele, 134 AD2d 475.)
In the instant case, defendant had no duty to warn persons of the danger of falling from the radio tower. The danger posed to unauthorized persons undertaking to climb the tower is open and obvious to anyone, and is in no way concealed or latent. This is made readily apparent by the photographs and illustrations of the radio tower submitted by both parties on this motion. Here, as in Bombard v Central Hudson Gas & Elec. Co. (205 AD2d 1018, Iv dismissed 84 NY2d 923), plaintiff, by his own examination before trial testimony, demonstrated that he was fully aware of the danger of falling from the radio tower on and even prior to June 13, 1992. Plaintiff testified at his examination before trial that he had climbed this same radio tower on one prior occasion, in early May 1992, and at that time, while climbing the tower, he became aware of the danger of falling. (Transcript, examination before trial, Sept. 15, 1994, at 23, 58.) The proof submitted shows not only that the danger was obvious to all, but that plaintiff was expressly aware of the danger posed.
Moreover, both the Oswego Fire Department Chief and Deputy Chief, who are routinely present at the East Side Fire Station, testified in their oral depositions that they had no knowledge of any unauthorized person climbing the subject radio tower prior to June 13, 1992. Plaintiff testified that no one witnessed his climb in May 1992, and Kenneth Cornelius, in his affidavit sworn to on February 5, 1996, attested that, on two occasions when he climbed the radio tower at 1:00 a.m., he was not aware of anyone becoming aware of his conduct. There is nothing in the record before the court to suggest that the County had knowledge or notice that certain persons were exposing themselves to the danger of falling from the radio tower in the middle of the night. Although knowledge of the dangerous activity might render foreseeable an otherwise unforeseeable risk of harm, plaintiff does not raise a question of fact on the issue of the County’s knowledge.
*609 Here, where plaintiff was fully aware of the danger of falling from the radio tower, the danger was obvious and apparent, and there is no showing that defendant had prior knowledge of the unauthorized climbing of the radio tower, there is no duty to warn as a matter of law. (Smith v Curtis Lbr. Co., 183 AD2d 1018, supra; Cimino v Town of Hempstead, 110 AD2d 805, affd 66 NY2d 709; Olsen v State of New York, 30 AD2d 759, supra.)
Defendant also claims that it had no duty to fence the radio tower to prevent plaintiff from climbing, and that plaintiff’s own reckless conduct caused his injury, which cannot, as a matter of law, be attributed to the negligence of the County. There is no question that the County, as occupier of the premises where the radio tower was located, had a duty to exercise reasonable care in maintaining the property in a safe condition. Plaintiff testified that pedestrians often used the macadam sidewalk between the radio tower and the fire station as a shortcut, and the sidewalk was used for public access to the fire station. Thus, it was foreseeable that pedestrians would travel through the area, even late at night, and the scope of the County’s duty would encompass any defect in the maintenance of the pedestrian way. However, plaintiff’s injury was not the result of a defective condition encountered as he passed through on his shortcut to his sister’s house. Plaintiff fell from a great height on the radio tower, a place where he was a trespasser, and where no reasonable person would expect one to be. Foreseeability of injury is a limitation upon, and defines the scope of duty. (Strauss v Belle Realty Co., 65 NY2d 399; Pulka v Edelman, 40 NY2d 781, 786.) "When a duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable.” (Pulka v Edelman, supra.)
In writing of the " 'orbit of* * * duty’ ”, Chief Judge Cardozo said " '[t]he range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury’.” (Ventricelli v Kinney Sys. Rent A Car, 45 NY2d 950, 952, citing Palsgraf v Long Is. R. R. Co., 248 NY 339, 345.) Here, plaintiff went beyond the realm of foreseeability (the measure of the scope of defendant’s duty) when his use of the shortcut through the fire station premises took him 100 feet up the radio tower from which he fell. Defendant’s duty to maintain the property in a reasonably safe condition did not extend to protection of plaintiff from the injury incurred in this case. "[T]he determination of the existence of a duty and the concomitant scope of that duty involve *610 a consideration not only of the wrongfulness of the defendant’s action or inaction, they also necessitate an examination of plaintiffs reasonable expectations of the care owed him by others.” (Turcotte v Fell, 68 NY2d 432, 437.) Plaintiff had no reasonable expectation of protection from the injury that befell him. The injury cannot be attributed to breach of duty of care by the County and, thus, the County is not liable in negligence. In reaching this decision, I have rejected plaintiffs attempt to show that it is custom and practice in the maintenance of radio towers to enclose them in a fence. The affidavits of plaintiffs experts are speculative (Price v Village of Phoenix, 222 AD2d 1079), and do not establish the custom and practice in the radio tower field. One expert relies upon his opinion "as a matter of common sense.” A matter of common sense, of course, belies the need for expert opinion. The other expert bases his opinion on the legal concept of attractive nuisance, which is a theory applicable only where the injured person is a child.
Even assuming that the County was negligent in failing to fence the radio tower, a conclusion which this court is not prepared to make, summary judgment must be granted to the County because the reckless conduct of the plaintiff was, as a matter of law, so "extraordinary and unforeseeable so as to break the causal chain.” (Kriz v Schum, 75 NY2d 25, 36; Boltax v Joy Day Camp, 67 NY2d 617.) Plaintiffs act in climbing the radio tower to such a height that he could not safely get back down, in the middle of the night after consuming several beers, was an intervening act between any conduct of the defendant and plaintiffs injury. Such intervening act was so reckless and unforeseeable that it must be held a superseding cause of the plaintiffs injury as a matter of law, which absolves the County of liability. (Caraballo v United States, 830 F2d 19; Howard v Poseidon Pools, 72 NY2d 972; Manning v Manning, 72 NY2d 972; Boltax v Joy Day Camp, 67 NY2d 617, supra; Smith v Stark, 67 NY2d 693.)
Although legal causation is generally a question for the trier of fact to resolve, summary judgment is appropriate " 'where only one conclusion may be drawn from the established facts’.” (Kriz v Schum, supra, 75 NY2d, at 34; Boltax v Joy Day Camp, 67 NY2d 617, supra; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315.) Here, the record " 'eliminates any legal cause other than the reckless conduct of the plaintiff’ ” (Kriz v Schum, supra, at 34), as plaintiffs acts were unforeseeable and sufficiently culpable "as to replace the defendant’s negligence [if *611 any] as the legal cause of the accident.” (Mesick v State of New York, 118 AD2d 214, 218, lv denied 68 NY2d 611.) "Plaintiffs disregard of his own common sense concerning his safety * * * was the proximate cause of his injuries.” (Johnson v Harrington, 215 AD2d 857, 858.)
No New York negligence cases are found involving injury to a trespasser falling from a radio tower. Analogy can be made to a line of cases involving similar injury resulting from diving into water lacking sufficient depth. (See, Boltax v Joy Day Camp, supra; Smith v Stark, supra; Howard v Poseidon Pools, supra; Manning v Manning, supra; Olsen v Town of Richfield, 81 NY2d 1024; Culkin v Parks & Recreation Dept., 168 AD2d 912, lv denied 77 NY2d 806; Adornato v Town of Smithtown, 212 AD2d 561; Tillman v Niagara Mohawk Power Corp., 199 AD2d 593.) In Boltax v Joy Day Camp (supra), the Court of Appeals affirmed summary judgment to defendants on the basis that, wholly apart from any negligence of defendants, plaintiffs reckless conduct was an unforeseeable, superseding event absolving the landowner of liability. In that case, plaintiff was an adult experienced in swimming and knowledgeable about the dangers of diving, who admitted his familiarity with the various water levels in the pool, yet he dove head first from the lifeguard chair into the shallow water. The Court held that, even if defendant was negligent in allowing trespassers to gain entry to the pool area (an obvious parallel to the failure to fence argument made in the instant case), the reckless conduct of plaintiff was the sole legal cause of plaintiffs injury as a matter of law. (Supra, at 620.) Similar determinations are made where plaintiffs, experienced swimmers knowledgeable about diving, and sufficiently familiar with the conditions existing at the time and place of injury, undertake the open and obvious risk of diving, which conduct is not foreseeable to the defendant landowners. (Kriz v Schum, supra, 75 NY2d, at 34; Howard v Poseidon Pools, supra; Manning v Manning, supra; Olsen v Town of Richfield, supra; Culkin v Parks & Recreation Dept., supra.)
Plaintiffs conduct in the instant case should be governed by the rules established in the cited diving cases. Plaintiff undertook the open and obvious risk of climbing the tower, with admitted knowledge of the danger of falling and with sufficient familiarity with existing conditions based upon his own prior experience. Such use of the tower was unintended and so reckless as to be unforeseeable. (Johnson v Harrington, supra, 215 AD2d, at 858.) Plaintiff must be charged "with the respon *612 sibilities and consequences of his own imprudent conduct.” (Garcia v City of New York, 205 AD2d 49, 55.) In the Third Department, the Courts articulate this ruling by holding that "[a] defendant is not required to protect a plaintiff from his own folly.” (Smith v Curtis Lbr. Co., 183 AD2d 1018, 1019, supra; Tillman v Niagara Mohawk Power Corp., 199 AD2d 593, supra.)
Plaintiff’s reckless conduct was the sole legal cause of his injury. Summary judgment dismissing the complaint against the County of Oswego is granted.