■ MARK FINGUERRA, Respondent, v STEPHEN CONN et al., Appellants, et al., Defendants. (And Other Actions.) [676 NYS2d 154] —Order, Supreme Court, New York County (Carol Arber, J.), entered February 5, 1997, which, *inter alia*, denied defendants-appellants' motion for summary judgment dismissing the complaint as against them, unanimously reversed, on the law, without costs, the motion granted and the complaint is dismissed as against the defendants-appellants. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

On July 15, 1989, the 30-year-old plaintiff was severely injured when he dove into a swimming pool owned by defendants Stephen and Ruth Green Conn, and struck his head on

the bottom or side of the pool. Plaintiff and his friends had rented the Conns' house in East Quogue, New York, for the month of July, and plaintiff had swum in the pool for many hours on each of the first three weekends of the rental period. The pool was rectangular in shape, with a 3-foot-deep shallow end and a 10-foot-deep opposite end. There was a diving board in the middle of the deep end. Plaintiff was familiar with the configurations of the pool, including the fact that the pool began sloping downward about halfway between the shallow and deep ends.

On the date of the accident, plaintiff and his fellow tenants swam in the pool and used the diving board for at least an hour in the morning. At 3:00 or 4:00 P.M., plaintiff and the others traveled to the beach by taxicab, and stayed there until approximately 8:00 P.M. During that time, plaintiff consumed three or four vodka tonics at the bar located at the beach.

Upon arriving back at the house, plaintiff went swimming again, doing a few laps and exiting and re-entering the pool a few times. Since it was dark, the pool light and a floodlight illuminated the area. Standing near a pool-side table and chairs located close to the halfway point of the length of the pool, a bit nearer to the deeper end, plaintiff dove into the water and struck his head. He did not recall what direction he had been facing, but believed he must have dove toward the deep end. In his pleadings and deposition testimony, plaintiff gave inconsistent statements as to whether he hit his head on the floor, or far wall, of the pool.

Plaintiff commenced the instant action in May 1990, alleging that the Conns were negligent in allowing a dangerous condition to exist on their premises by not taking the necessary steps to warn potential users of the varying depths of the pool, and of the dangers of diving therein. In September 1996, the Conns moved for summary judgment seeking dismissal of the complaint on the ground that the plaintiff's own reckless actions in diving into the middle of the pool, rather than in the deep end or off the diving board, were the sole proximate cause of his injuries.

Plaintiff submitted an affidavit in opposition to defendants' motion that stated that he did not dive into the shallow area of the pool, presumably to rebut the charge of recklessness, and that defendants' failure to warn him of the dangers of diving into the pool at that location was the proximate cause of his injuries. Plaintiff also submitted an expert's affidavit from a consulting engineer with experience in the pool industry. The expert stated his opinion that the "sole proximate cause of the

injuries sustained by [the plaintiff] was the design and construction of the swimming pool." The expert asserted that the pool was unsafe for diving because of its "hopper," or V-shaped design, where the sides taper in towards the bottom, thereby reducing the safe area for diving to 6% of the entire pool surface. The expert also stated that the vinyl liner in the pool was defectively designed and colored, so that it "optically camouflaged" the tapered walls.

The IAS Court denied the Conns' motion, finding issues of fact as to whether they were aware or should have been aware of the dangers of the pool, and whether the liner was defective.

We reverse and grant the Conns' motion for summary judgment. The Court of Appeals has held that in negligence actions arising out of diving accidents in swimming pools, a defendant's motion for summary judgment should be granted where " 'the record eliminates any legal cause other than the reckless conduct of the plaintiff' (*Howard v Poseidon Pools*, 72 NY2d [972,] 974 * * *)" (*Kriz v Schum*, 75 NY2d 25, 34). Such is the case where, notwithstanding that a defendant's negligence may have been a causative factor in the accident, "the reckless conduct of the plaintiff constituted an unforeseeable superseding event, sufficient to break the causal chain and thus absolve the defendant of liability (*Boltax v Joy Day Camp*, 67 NY2d [617,] 620 * * *)." (*Kriz v Schum, supra*, at 35.)

These principles govern the outcome of the instant appeal. Plaintiff, an experienced swimmer and diver, had great familiarity with the various depths of the pool by virtue of his many hours of swimming on the first three weekends of the rental period, including the date of the accident. Plaintiff's deposition testimony revealed that he was fully aware of the depth of each end of the pool, and that the bottom of the pool sloped downward at the halfway point of the length of the pool. Thus, despite his claim to the contrary, based on plaintiff's general knowledge of pools, his personal observations of this pool prior to the accident and common sense, "plaintiff must have known that, if he dove into the pool, the area into which he dove contained shallow water" (*Smith v Stark*, 67 NY2d 693, 694; *see also, Lionarons v General Elec. Co.*, 215 AD2d 851, 852-853, *affd* 86 NY2d 832 [plaintiff's headfirst dive into the area of water that he could only assume was of sufficient depth constituted an unforeseeable superseding event]).

Plaintiff attempts to distinguish these cases by asserting that he dove into the deep end of the pool, rather than water he knew to be shallow, and that therefore his actions were not reckless as a matter of law (*see, Denkensohn v Davenport*, 75

NY2d 25, 36-37; *Ziecker v Town of Orchard Park*, 75 NY2d 761, 763; *see also, Amatulli v Delhi Constr. Corp.*, 77 NY2d 525). This argument fails on multiple grounds. Even a liberal reading of plaintiff's deposition does not support his claim that he dove into the "deep end"; rather, he was at the midway point of the pool, and he may have dove *towards* the deep end (*see, Sciangula v Mancuso*, 204 AD2d 708, 709 [summary judgment proper where plaintiff, familiar with the varying depths of the pool, dove into pool at halfway point between deep and shallow end and injured himself]). Secondly, it is not the precise depth of the water that renders the plaintiff's actions reckless, but rather his decision to dive into water that, based on his own personal experience, was not deep enough to safely complete his dive. Plaintiff's prior activities in this pool rebut any claim that he was unaware of the depth. Further, a plaintiff's voluntary consumption of alcoholic beverages before diving into a pool has been considered by courts on the issue of whether plaintiff's recklessness constituted the sole proximate cause of his injuries (*see, DeRosa v U.S. Dredging Corp.*, 215 AD2d 625; *Johnson v Harrington*, 215 AD2d 857, *lv denied* 87 NY2d 802; *Feldman v Drum*, 178 AD2d 504, *lv denied* 80 NY2d 752). As there is no liability for the failure to warn of obvious dangers that would have been appreciated by the user to the same extent as a warning would have provided (*Belling v Haugh's Pools*, 126 AD2d 958, 959, *lv denied* 70 NY2d 602), the Conns' failure to warn plaintiff of this obvious danger was not the proximate cause of his injuries (*Howard v Poseidon Pools, supra*, at 974-975).

Given this conclusion, the expert affidavit submitted by plaintiff fails to raise an issue of fact as to the Conns' liability. Initially, these allegations are more properly directed at the manufacturer and installer of the liner, who are not parties to this appeal, since there is no evidence that the Conns used the liner or the pool in any manner other than its intended use (*cf., Amatulli v Delhi Constr. Corp., supra*). In any event, the expert's opinion that the sloping walls constituted an unsafe condition was largely conclusory, as his belief that only 6% of the pool was safe for diving was unsupported by empirical data, and was not compared with any industry standards (*cf., Kriz v Schum, supra*). Similarly, the expert's assertion that the pool liner "optically camouflaged" the depth of the water was likewise offered in conclusory terms (*see, Amatulli v Delhi Constr. Corp., supra*, at 534). Concur—Sullivan, J. P., Milonas, Williams, Mazzarelli and Saxe, JJ.