◼ JOSEPH TESTAVERDE et al., Appellants, v FREDERICK LYMAN et al., Respondents, et al., Defendants. [793 NYS2d 182]—

In an action, inter alia, to recover damages for personal injuries, the plaintiffs appeal (1), as limited by their brief, from so much of an amended order of the Supreme Court, Nassau County (Dunne, J.), entered January 20, 2004, as, in effect, granted that branch of the motion of the defendants Frederick Lyman and Janna Lyman which was for summary judgment dismissing the complaint insofar as asserted against them and (2) a judgment of the same court entered March 5, 2004, which, upon the amended order, is in favor of the defendants Frederick Lyman and Janna Lyman and against them dismissing the complaint insofar as asserted against those defendants.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondents.

The appeal from the intermediate amended order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (*see Matter of Aho,* 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the amended order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

The plaintiff Joseph Testaverde, then 17 years old, was severely injured during a Fourth of July party when he entered the shallow end of an in-ground swimming pool head first from a balcony/landing area on the second floor of the house. Joseph and his parents commenced this action, inter alia, to recover damages for personal injuries against, among others, the owner

of the pool and house, the defendant Frederick Lyman, and his daughter, the defendant Janna Frederick. Janna was the host of the party which occurred while her parents were out of town. The plaintiffs alleged that the respondents were negligent, inter alia, in failing to post water-depth markers and "no diving" signs around the pool, in failing to provide proper illumination for the pool, and in failing to warn Joseph of the danger of entering the pool from the railing of the balcony/landing area. After significant disclosure, the Supreme Court granted that branch of the motion of the respondents which was for summary judgment dismissing the complaint insofar as against them. We affirm.

At his examination before trial, Joseph testified that he was an experienced swimmer and diver, who had been warned on numerous occasions by his parents and others concerning the dangers of diving into unknown waters in general. He was aware that he could sustain a serious injury if he dove into shallow water, which he described as "common sense." On the night in question, he saw several party-goers jumping into the respondents' pool from the second floor balcony/landing area. Photographs entered into evidence revealed a wooden staircase near the shallow end of the pool leading to a small wooden balcony/landing area outside a sliding glass door on the second floor of the respondents' house. The railing, which was approximately $3^{1}/_{2}$ feet high, was approximately 12-14 feet above the surface of the pool. Joseph and his friends described one jumper they knew as being "crazy" and having "some nerve" because they understood that jumping from the balcony was dangerous and could result in serious injury. Indeed, given the danger, Joseph and his friends thought that the jumpers "were out of their mind[s]." However, none of those jumpers, all of whom landed feet first in the water, were injured.

At some point, Joseph decided to jump into the pool to cool off. As he approached the stairs leading up to the balcony he only "glanced" at the pool and made no inquiries as to its depth, or whether the depth varied. Indeed, when asked if he observed any depth markers, he stated, "I figured that it was safe to jump since everyone had been doing it all day, so I didn't even bother to look." He also observed several kids swimming in the pool and "thought the whole pool was one depth." Joseph testified that he had intended to stand on the railing and "see how deep it was" before he jumped. He also testified that he intended to jump into the pool feet first, as he had seen others do, because he was aware that "diving" from the balcony/landing area could result in serious injury. However, he testified, that as he was

bringing his right foot onto the railing, he lost his balance and tumbled forward off the balcony and head-first into the pool. Joseph agreed that he did not notice any defect in the railing, nor that it moved or wobbled, and stated that he was aware that the purpose of the railing was to "stop people from falling off or anything falling off, protection reasons, safety reasons."

The focus of the plaintiffs' allegations of negligence as against the respondents was on the alleged lack of proper signs, markings, and illumination for the pool, and the failure to warn Joseph concerning the danger of using the balcony/landing area for jumping or diving. However, by Joseph's testimony, his head-first entry into the pool was the unintended result of a loss of balance and fall from the balcony/landing area before making any inquiries concerning the depth of the pool. The alleged lack of proper signs, markings, illumination, and warnings was not a proximate cause of Joseph's loss of balance and fall. Moreover, Joseph admittedly was aware that entering the pool from the balcony railing was dangerous, and that a head-first or diving entry presented a particular risk of serious injury, even in the absence of such signs, markers, illumination, and warnings and without any inquiry on his part as to the depth of the water or any other relevant features of this pool. Indeed, the railing was clearly and admittedly not intended as a diving or jumping platform. Given the height of the railing above the water, the danger presented by using it as such, especially without any inquiry as to the depth of the water or any other relevant features of the pool, was not only obvious and readily ascertainable by the use of common sense, but was actually ascertained (see Kriz v Schum, 75 NY2d 25 [1989]; Smith v Stark, 67 NY2d 693 [1986]; Fernandes v Lawrence, 10 AD3d 382 [2004]; Edmonds v Fodera, 239 AD2d 383 [1997]). Accordingly, the Supreme Court properly granted that branch of the respondents' motion which was for summary judgment dismissing the complaint insofar as asserted against them. H. Miller, J.P., Ritter, Rivera and Spolzino, JJ., concur.